IN RE DISBARMENT OF A. M. CLOUD.

No. 41724.

4

SEPTEMBER 26, 1933.

E. A. Johnson and Trewin, Simmons & Trewin, and Havner, Flick, Huebner & Powers, for appellant A. M. Cloud.

Edward L. O'Connor, Attorney-general, L. W. Powers, Assistant Attorney-general, and Neill Garrett, Special Counsel, for appellee.

ANDERSON, J.—This is an action for the disbarment of the respondent, A. M. Cloud, who has practiced law in Delaware county, Iowa, for more than 32 years.

Section 10929 of the Code provides that:

"Any court of record may revoke or suspend the license of an attorney or counselor at law to practice therein, and a revocation or suspension in one county operates to the same extent in the courts of all other counties."

Section 10930 specifies certain grounds for such revocation or suspension, among which are: Being guilty of a willful disobedience or violation of an order of the court; a willful violation of any other duties of an attorney; or the doing of any other act to which such a consequence is by law attached.

Section 10931 provides that the proceedings in disbarment may be commenced by the direction of the court or on motion of any individual. If by the court, some attorney must be directed to draw up the accusation; if on motion of any individual, the accusation must be drawn up and sworn to by the person making it.

Other provisions provide for order of court requiring the accused to appear and answer; certification of a copy of the accusation to the clerk of the Supreme Court; notice to the Attorney-general by the Chief Justice of the filing of the accusation; the prosecution of such charges by the Attorney-general; and,

Section 10934-b4 provides, "The Supreme Court shall designate three district judges to sit as a court to hear and decide such charges."

Other sections of the Code provide that the Chief Justice of the Supreme Court shall designate the time the hearing on the accusation shall be had, and that it shall be held in the county where the accusation was originally filed; that the determination of all issues shall be made by the judges so selected; and,

Section 10934-b7 provides, "The records and judgment at such trial shall constitute a part of the records of the district court in the county in which the accusations are originally filed."

Other sections provide that all the evidence taken upon such trial shall be reduced to writing, filed and preserved; and that a judgment of acquittal by the court is final.

Section 10936 provides, "In case of a removal or suspension being ordered, an appeal therefrom lies to the Supreme Court, and all the original papers, together with a transcript of the record, shall thereupon be transferred to the Supreme Court, to be there considered and finally acted upon."

The proceeding was commenced in this case by the filing in the district court of Delaware county, Iowa, of an order which it is conceded was prepared and signed by all three judges of the Tenth

Judicial District of Iowa, in chambers, in Waterloo, Black Hawk county, Iowa, on the 5th day of February, 1932. This order appointed an attorney to make a full and complete investigation of the conduct of the respondent, and in the event such attorney should find sufficient grounds existing for the revocation of the license of A. M. Cloud to practice law in the state of Iowa, that such attorney should draw up and file accusations. The order was entitled, "In the District Court in and for Delaware County, Iowa." It was taken by one of the judges of the district, Hon. A. B. Lovejoy, to Manchester, Delaware county, Iowa, and there filed and made of record in the district court in and for said county by the said judge, A. B. Lovejoy, on the 19th day of February, 1932, at a time when the district court of Delaware county was in session, and the said A. B. Lovejoy was the presiding judge. On the same day Hon. B. F. Butler, the attorney designated in said order to investigate, prepare, and file accusations, filed his report and accusations in pursuance of the order theretofore entered in the district court of Delaware county, Iowa. The Hon. A. B. Lovejoy, presiding judge, ordered that the said A. M. Cloud, respondent, be required to appear and answer in that court as by law provided; and that a copy of the order and accusations be served personally upon him. Thereafter this court, acting under the provisions of section 10934-b4 of the Code, appointed three district judges, Hon. Frank Bechly, Hon. H. D. Evans, and Hon. George A. Heald to sit as a court to hear and decide such charges. Issues were joined, a trial was had, and a judgment disbarring the respondent and revoking his license was entered by two members of the special court so hearing the case, and a dissenting opinion was filed by the other member. From such majority finding and judgment the respondent has appealed.

The first question we will notice, as raised by the appellant, is that the preliminary order bearing date of February 5, 1932, and signed by all of the judges of the Tenth Judicial District, was not such an order of court as is provided and contemplated by section 10931 of the Code. This, for the reason that judges of the district court in Iowa cannot sit *in banc*; that the Constitution of the state provides that the district court shall consist of one judge only; that the district judges could not act as a district court of Delaware county outside the limits of that county; that the alleged order was not an order of the court; and that no jurisdiction was conferred

upon the court to proceed with the disbarment proceeding under said pretended order.

It is true the record shows the preliminary order in this case was prepared and signed by all three judges of the Tenth Judicial District at Waterloo, Iowa. But the preparation and signing of the order did not constitute it an order of court until it was filed in the office of clerk in the district court of Delaware county. It was taken there and filed by the presiding judge at a time when court was in session. It thereby became the order of that court. The attorney designated in that order had no doubt been advised that he would be appointed by the court, and had made his investigation and prepared the accusations, and they were apparently ready to be filed as soon as the preliminary order was made a matter of record.

We do not think this preliminary order is jurisdictional, but, even if it was, it became an order of the court at the time it was filed. The second order that was filed on the same day, February 19, 1932, constitutes the jurisdictional order. In this the court found that the accusations were sufficient to justify further action, and ordered that a copy of the report and accusations be served upon the respondent, and that he be required to appear and answer thereto in court on or before the 4th day of March, 1932. We therefore hold that the orders and accusations were in compliance with the provisions of the statute, and that there is no merit in the appellant's contention at this point.

The next contention of the appellant is that the legislature is without power or authority to pass a statute for the trial of a disbarment proceeding by three district judges, and contends that such action is in contravention of the Constitution of the state of Iowa; that the Constitution provides that the district court shall consist of a single judge, and that if this special tribunal was not the district court, then it was not a court of record, and had no legal existence; that the legislature is without authority to provide that three judges shall preside over any proceeding pending in the district court of any county in the state; that the act of the legislature conferred no power or authority upon the Supreme Court to appoint three judges to sit as a trial court and hear and determine the issues here involved; and that the three judges so appointed, having no legal authority to sit as a court, the judgment and decree rendered by them is absolutely void; and that it violates the rights of the appellant

in depriving him of his liberty and property without due process of law, and denies him the equal protection of the law.

Section 1, article V of the Constitution of the state provides as follows:

"Section 1. The Judicial power shall be vested in a Supreme Court, District Courts, and such other Courts, inferior to the Supreme Court, as the General Assembly may, from time to time, establish."

Under this constitutional provision the legislature clearly has the power and authority to create other courts and tribunals inferior to the Supreme Court, and in addition to the district courts. The exercise of this power by the General Assembly in creating municipal and superior courts has been repeatedly sustained by this court. Acting under this constitutional power, the Forty-second General Assembly enacted chapter 220, which was an amendment to sections 10933 and 10934 of the 1924 Code, and now appears in the 1931 Code as sections 10934-b1 to 10934-b9, inclusive, and is a part of chapter 483 of the present Code. The amendment does not change the prior provisions of the chapter in reference to the revocation or suspension of the license of an attorney or counselor at law, but does provide in detail as to the tribunal before which such actions shall be tried, and the procedure following the filing of the formal accusations in the district court. The act provides for the designation by the Supreme Court of three district judges to sit as a *Court* to hear and decide the charges. It requires that the time of the hearing shall be fixed by the Chief Justice of the Supreme Court, and that it shall be held within the county where the accusation was originally filed; that the determination of all issues shall be by the court so selected; that the records and judgment of such trial *shall constitute a part of the records of the district court* in the county in which the accusations are originally filed; that all of the evidence taken at such trial shall be reduced to writing, filed, and preserved. The original statute also provides, section 10936, that a judgment of acquittal is final, but that in case of a judgment of disbarment an appeal to the Supreme Court may be taken, and all of the original papers together with the transcript of the record shall thereupon be transferred to the Supreme Court to be there considered and finally acted upon.

We do not think there was any attempt upon the part of the

legislature to constitute the special tribunal here provided for, a district court. A special tribunal or court was created by the act for the purpose of hearing and deciding the issues to determine the fitness of an attorney or counselor to continue in the practice of the profession. It is a special court created by the legislature under the power and authority granted by the constitutional provision quoted above. The provisions of the Code requiring that the proceedings be commenced by the filing of the accusations in the district court, and that the records and judgment of the special trial court shall constitute a part of the records of the district court in the county in which the accusations are originally filed, constitutes this special tribunal or court, a court of record, conferring upon it the jurisdiction and authority to hear and determine all issues involved in the special proceeding submitted to it.

 We are of the opinion that this court recognized and passed upon the constitutionality of the act in question when it assumed jurisdiction under its provisions and made the order appointing the three district judges as members of, and to constitute, the special court provided for in the act. The case of Des Moines Water Co. v. City of Des Moines, 206 F. 657, decided by the Circuit Court of Appeals of the Eighth Circuit, is quite determinative of the question. This case involved the constitutionality of an act providing for the appointment by the Supreme Court of three district judges as a condemnation court or tribunal. The city was required to present to the Supreme Court a resolution asking for the appointment of such tribunal. In the course of the opinion we find this language:

"The Supreme Court of Iowa has not passed upon the constitutionality of this act, unless it did so when it appointed the court of condemnation in this case, and perhaps when it so acted in other cases. Whether or not such appointment in this case was a holding that the law was constitutional was not decided by the three judges who denied the application made herein for a preliminary injunction. [Des Moines Water Co. v. Des Moines] (D. C.) 194 F. 557. It is to be noticed that in this proceeding the order was made by the court, and not by the Chief Justice. Did the making of that order necessarily decide that the law was constitutional? We think that it did. * * * It cannot be believed that the Supreme Court took upon itself the performance of a duty sought to be imposed upon it by a new law, without carefully considering its power so

to do. But whether it did or not we are bound to presume that it did." Citing, Cross v. Allen, 141 U. S. 528, 12 S. Ct. 67, 35 L. Ed. 843.

It will be noticed in this connection that the act under consideration provides that the appointment of three judges shall be made by the *Supreme Court,* and not by the Chief Justice.

The right to practice law is not a constitutional right, but is a privilege only. An attorney is but an officer of the court, and is liable to the summary jurisdiction of the court. His right to practice is not a vested right. It may be revoked when his conduct is such as to unfit him to continue in the practice of the profession. And the suspension or cancellation of his license by a court exercising its inherent or statutory authority is not in contravention of any of the provisions of the Constitution of the United States or of this state.

Complaint is also made by the appellant that the finding and judgment of disbarment in the instant case is of no force or effect and is invalid, for the further reason that such finding and judgment was not by a unanimous court, but only by two of the three judges constituting such court. There is no merit in this contention. The evident intention of the legislature in adopting the act creating the special tribunal of three judges was to avoid the trial and finding of fact in so serious a charge as this by a single judge, and to extend to the accused the right of a trial before a fact-finding tribunal composed of three judges instead of one. If this were not so, no reason can be found for the amendment of the statute conferring the jurisdiction to hear and determine such issues upon a court composed of three judges instead of one. We therefore hold that the act of the legislature in question is constitutional; and that the special court created by its terms is a court of record, within the meaning of the statute; that it was legally constituted and had jurisdiction to try and determine the issues involved in this action, and that its finding and judgment, concurred in by a majority of its members, is a finding and judgment of a court of record.

The next question raised by the appellant is that the case is triable here de novo. And he contends that this was the position taken by the appellant in the court below, and that this court made

an order that the cause be presented in this court on printed abstracts.

The transcript of the record does not sustain the appellant in the contention that the cause was tried in the court below as in equity. In addition to the colloquy between counsel and court, quoted and set out in the abstract, we find the following in the transcript:

"By the Court: Now, gentlemen, have you decided among yourselves as to the form of procedure you desire followed?

"Mr. Havner: Your Honor, we have. We have reached the conclusion ourselves, and upon that we are agreed, that we should have a ruling upon the testimony as we proceed. And we desire, of course, that in any adverse ruling there would always be entered, as is the general rule, the exception to the ruling.

"The Court: An exception will be noted, Mr. Havner, to every ruling made by this court.

"Mr. Garrett: Do I understand that this is being tried at law?

"By the Court: On the request of the defendant's counsel, it will be tried as an action at law."

Following the foregoing ruling, made by the agreement and at the request of appellant's counsel, the case was tried as an action at law. Rulings were made upon objections; and in appellant's assignment of errors we find two errors assigned based upon the court's refusal to permit the respondent, A. M. Cloud, to answer certain interrogatories propounded to him.

We have held that special proceedings are generally triable as law actions, and that on appeal the issues are to be determined on errors assigned. Union Building & Saving Association v. Soderquist, 115 Iowa 695, 87 N. W. 433; Phoenix Fire Extinguisher Co. v. T. M. Sinclair & Co., 169 Iowa 564, 151 N. W. 462; Norman v. Bennett, 216 Iowa 181, 246 N. W. 378.

In the Norman v. Bennett case, supra, which was a special proceeding against an attorney, brought under the provisions of section 11608 of the Code, this court, speaking through Justice Kindig, says:

"There being a conflict, then, in the evidence on the questions under consideration, this court, in this special proceeding, is bound by the finding of the municipal court. * * * On appeal in cases arising under a special proceeding of the kind in question, the controversy is determined on errors assigned."

However, notwithstanding the record made below by agreement of counsel that this proceeding be tried as a law action, under our prior holdings, a special proceeding for disbarment is an exception to the general rule and is triable here de novo, and we are so considering the present appeal.

In State v. Mosher, 128 Iowa 82, 103 N. W. 105, 5 Ann. Cas. 984, we held:

"Special proceedings are generally triable on errors, but the statute makes an exception in the case of disbarment proceedings. The only object in directing the preservation of the evidence, and on appeal having 'all the original papers with the transcript of the record' transferred to the Supreme Court ' to be there considered and finally acted upon,' as required by section 329 [10936] of the Code, is to enable this court to hear the case de novo."

As to whether or not the amendments to the statute providing for a special court of three judges to try and determine cases of this kind disposes of the exception mentioned, we do not now decide.

Appellant in his brief and argument insists that the cause is triable here de novo, "but for convenience of the Court," makes an assignment of errors. Such assignment has proven a convenience in this court in considering the matters involved, and we are following its order in our further discussion. The assignment of errors may be grouped under the following heads:

1. The court erred in holding that it had jurisdiction to try and determine the issues, for the reason that the action was commenced by the order of three district judges and not by the district court.

2. That the act of the legislature in providing for the appointment of three district judges to try and determine the issues in the disbarment proceedings is unconstitutional and void, for the reason that under the Constitution the district court shall consist of one judge; that the district judges cannot sit in banc; that the special court provided for by the act of the legislature in question is not a court of record, and is without authority under the statute to assume jurisdiction, or hear and determine an issue of the kind here involved.

3. All other errors assigned are as to the sufficiency of the evidence to support the accusations against the appellant.

We have considered the questions raised under the first two

assignments of errors as above grouped, and we will now direct our discussion to the third.

The printed abstract with its three amendments, all prepared and filed by the appellant, consists of 717 pages; the transcript includes 1,412 typewritten pages with 200 exhibits additional. We have carefully read and considered both the abstract with its amendments, and the transcript of the record. To attempt to make other than a brief statement of the facts as disclosed by the record would extend this opinion to an unnecessary length, and this we will avoid.

 The record discloses that the appellant has practiced law in Delaware county, Iowa, for more than 32 years; that he has been a man of wide business experience, and that any malfeasance or misconduct on his part, or any violation of the ethics or duties of an attorney and counselor at law by him, cannot be excused or condoned on account of youth or inexperience.

The accusations as filed consisted of six separate charges. One of these was dismissed by the prosecution. In another one the trial court found that it was not sustained by the record. In the other four the trial court found that the charges were sustained by "clear, satisfactory, and convincing evidence." A majority of the trial court also found that the conduct of the respondent, as disclosed by the record, "shows moral turpitude of a gross character and intentional and willful misconduct as an attorney in his relations with his clients and with the Court, and that his conduct, as shown by the evidence, was such as to bring reproach upon the legal profession, and shows him to be an unfit person to be a member of the legal profession," and entered an order and judgment disbarring the respondent and revoking his certificate to practice law in the courts of the state of Iowa.

There was a dissenting opinion filed by one of the trial judges in which he disagrees with the finding and judgment of the majority of the court on the fact questions.

The first charge in the accusations against the respondent is known as the "Slack charge." The record in this case indicates that the respondent had collected on a judgment for one Winfred Slack the sum of $500; that he concealed the fact from the client that he had collected the money, or at least did not advise her of the fact for some time; that when his client discovered that he had collected the money and went to his office to obtain it, the respondent did not have the money, but finally gave her $50 in cash and postdated

checks for $250; that the postdated checks were not paid on their respective dates, and were not paid at all until an investigation of the respondent's conduct in this and other matters was in progress. It is true that all of the money was finally paid and an affidavit was secured from the client, Winfred Slack, in some degree supporting the claim of the respondent that the client had voluntarily loaned the money to him. But she had made an affidavit prior to that time, at the solicitation of the county attorney, who was investigating the matter, which is directly opposed to the statements made in her last affidavit, and sustains the charge as contained in the accusations. There is a strong inference that the last affidavit was obtained by the respondent at the time of, and possibly in consideration of, the payment to Miss Slack of the amount of the postdated checks.

Two other accusations have to do with the guardianship, and also with a trusteeship of one Herbert Adolph Schultz. The record shows that the respondent was appointed trustee of certain trust funds, and guardian of certain property, all belonging to his ward, Herbert Adolph Schultz, in a large amount; that he used practically all of said funds for his own personal use and private enterprises, from the time it came into his hands until about the time he attempted to obtain approval by the court of his reports as trustee and guardian. The funds so held by him in trust were not invested or deposited upon any order of the court, and during most of the time were invested in loans made upon property either owned or controlled by the respondent himself. In making his reports to the court at various times as to the investment of these funds, he reported that they were invested in real estate mortgages upon highly improved real estate of more than double the value of the loans. When the court finally discovered the irregularities, the respondent admitted his personal use of the funds and his failure to obtain court orders permitting the investments, and by his conduct toward the court in reference thereto, showed an utter disregard of the law governing the care, custody, and investment of such trust funds, and also an intentional attempt to deceive and mislead the court.

Another one of the accusations involves what is known in the record as the Anthony Robinson estate, in which the respondent was appointed guardian. This estate involved approximately $66,000, and the entire amount was used by A. M. Cloud, the respondent, in his own personal business or in that of a mortgage company of which he was president. Practically all of the funds of this large

estate were invested in mortgages upon real estate owned by the respondent personally. One of such loans was for $14,000, and was upon a one-sixth interest on 380 acres of land. Cloud was the obligor in this note and mortgage. Another was for $17,000 upon the private residence of the respondent in Manchester, Iowa. Other loans were upon real estate in small towns in Iowa and on real estate in the state of Dakota and Canada, practically all upon property either owned or controlled by Mr. Cloud himself. In making the various reports to the court as to the condition of the estate, he concealed the fact that he was using the funds personally, or that they were invested in mortgages upon his own real estate. He switched alleged securities from one of the three estates mentioned to another; and, when cautioned by the court that certain of these securities would have to come out of a certain estate in which they were listed, he would place them in another estate and report to the court the investment of the funds, without describing the securities or naming the obligor. He acted as his own attorney in these estate matters, and, while he was a joint guardian in one of the estates, he personally handled all of the funds of the estate.

There was too evident a purpose on the part of the respondent to intentionally deceive and mislead the court.

 It is true that, after an investigation of the respondent's conduct in regard to his handling of the trust funds was commenced by the county attorney of Delaware county and the judges of the Tenth Judicial District, he made final reports in these estates and final accounting for all of the money which he had received, but not all of this until he had been removed as guardian and was sued by his successor in trust. Settlement by an attorney with clients or wards on a basis satisfactory to them does not preclude an inquiry as to his moral and professional acts. And the fact that he has settled and accounted in these various estates constitutes no defense to this proceeding to disbar him.

"Payment of the amount due or withheld, when made by the attorney after the proceedings for disbarment have been commenced, or are about to be instituted, does not operate to relieve him from the liability already incurred, and the Court may proceed to disbar him." 6 C. J., pages 601 and 602, sections 62 and 63.

In re Radford, 168 Mich. 474, 134 N. W. 472, the Supreme Court of Michigan held in a like case, that the misconduct of an

attorney while acting as an executor or administrator in appropriating to his own use, funds of the estate, are sufficient grounds for disbarment.

Section 10921 of the Code provides that an attorney who is guilty of deceit or collusion with an intent to deceive a court or judge, or a party to an action or proceeding, is liable to be disbarred. And we have held that a showing of such delinquencies as to unfit an attorney for the proper discharge of the trust reposed in him, or an absence of common honesty and veracity in his professional intercourse, or a betrayal of the courts and his clients, are sufficient upon which to base a judgment of disbarment. State v. Mosher, 128 Iowa 82, 103 N. W. 105, 5 Ann. Cas. 984; In re Disbarment of Elmer L. Hunt, 201 Iowa 181, 205 N. W. 321; State v. Kaufmann, 202 Iowa 157, 209 N. W. 417; State v. Metcalfe, 204 Iowa 123, 214 N. W. 874; State v. Johnson, 149 Iowa 462, 128 N. W. 837; State v. Rohrig, 159 Iowa 725, 139 N. W. 908.

There are many delinquencies and irregularities in the estate matters involved other than we have mentioned. We are satisfied that the record in this case shows that the conduct, acts, and attitude of the defendant have been such as to utterly unfit him to continue in the practice of the profession, and to have the confidence and respect of clients or the bench and bar. The acts and conduct of the respondent as shown by this record should not and cannot be countenanced or tolerated.

The case being tried de novo here, we can arrive at no conclusion other than was reached by a majority of the trial court. In our opinion the finding and judgment of the trial court is amply supported by the record, and the order and judgment appealed from is therefore affirmed.

It is further ordered that the stay order heretofore issued by this court is hereby annulled as of the date of the filing of this opinion—Affirmed.

ALBERT, C. J., and KINDIG, CLAUSSEN, STEVENS, MITCHELL, and DONEGAN, JJ., concur.

EVANS and KINTZINGER, JJ., take no part.