Marla ROWEN et al., Appellants,

v.

LeMARS MUTUAL INSURANCE COM-
PANY OF IOWA et al., Appellees.

No. 2–57051.

Supreme Court of Iowa.

June 25, 1975.

David C. Bayne, Iowa City, and R. E. Franck, of Raun, Franck, Mundt & Nepper, Denison, for appellants.

John C. Eddy and Merrick Scott Rayle, of Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, for appellees-cross-appellants Iowa Mut. Ins. Co. of DeWitt, LeMars Mut. Ins. Co. of Iowa, Raymond A. Brown, William Couch, George S. Howes, John C. Howes, Carl J. Smith, Carman G. Smith, John R. Wilkinson, J. Ray Judge, D. M. Molyneaux, W. L. Rutenbeck, John Breese, and Alesch, Inc.

Paul Moser, Jr., Des Moines, for appellee Burton Dull.

Davis, Jacobs & Gaul, Sioux City, for appellees M. H. and W. K. Tappans.

Robert E. Beebe, Sioux City, for appellee M. H. Gearke.

James N. McNally, LeMars, for appellees P. G. Vander Meer and John M. Vollman.

Gleysteen, Harper, Kunze, Eidsmoe & Heidman, Sioux City, for appellees Alesch, Margaret A. Sevenich, Mary Kay Buffington, and Jane M. Warnock.

McCORMICK, Justice.

This appeal involves jurisdictional questions in a derivative and class action by policyholders of LeMars Mutual Insurance Company of Iowa (LeMars). LeMars is a nominal defendant. The other defendants are 14 alleged corporate insiders of LeMars, 11 alleged corporate insiders of the Iowa

Mutual Insurance Company of DeWitt, Iowa (DeWitt), DeWitt itself, and Alesch, Inc., an insurance agency. The trial court overruled a special appearance filed by several of the defendants but sustained motions to dismiss or motions for summary judgment filed by all defendants. Plaintiffs appeal, and the defendants whose special appearance was overruled cross-appeal. We reverse and remand on plaintiff's appeal, and we affirm on the cross-appeal.

Plaintiffs have filed a motion in this court challenging the right of counsel for certain of the individual defendants to represent at the same time the two mutual insurance companies. We sustain their motion in part and overrule it in part.

We will first resolve the question on the appeal, then the question on the cross-appeal, and, finally, the question on the motion.

These questions must be addressed in the context of a limited record. Since the action has not proceeded beyond the pleading stage, we are dealing with issues raised by allegations of the plaintiffs, not by evidence.

Plaintiffs' petition, filed in May 1973, is in four divisions. Their common allegations may be summarized as follows. Prior to April 1970 several directors of LeMars were the sole owners of Alesch, Inc., an independent insurance agency located in the city of LeMars. In February 1970, DeWitt entered an agreement with Alesch, Inc., pursuant to which DeWitt was to pay $500,000 to Alesch, Inc., to acquire ownership of Alesch, Inc., and control of LeMars. The liquid assets of Alesch, Inc., are recited in the agreement as worth $100,000. The actual value of Alesch, Inc., was $30,000, the $470,-000 difference in purchase price constituting a bribe to the owners of Alesch, Inc., to deliver control of LeMars to DeWitt. The policyholders of LeMars were not given notice of the agreement. Subsequently it was carried out. The policyholders did not share in the proceeds of the sale of control. After DeWitt took control of LeMars, its representatives looted the corporation and wasted corporate assets.

Division I of the petition, a derivative claim, alleges the sale of control resulted from bribery. It includes allegations that certain annuities were granted former directors of LeMars to be paid from assets of LeMars in addition to the premium paid for purchase of control. Division II is the class action. It is predicated on an alleged loss of equal opportunity by the LeMars policyholders to share in the consideration involved in sale of control of their corporation. Division III, a derivative claim, is predicated on the alleged wasting of LeMars assets. The claim involves payment of certain salaries and annuities, and payment of a management fee to DeWitt. Division IV, also derivative, seeks damages for alleged breach by defendants of fiduciary obligations to LeMars. Plaintiffs ask substantial actual and punitive damages for LeMars and its policyholders and for an injunction against future payments from LeMars to the other defendants.

Fourteen defendants, including LeMars and DeWitt, certain past and present directors and officers of those corporations, and certain past and present directors and officers of Alesch, Inc., filed what was denominated "Special Appearance and Motions." Two defendants filed motions to dismiss. The remaining defendants filed answers. After hearing, the trial court ruled that the appearance asked the court to decide questions other than its own jurisdiction and constituted a general appearance. The court treated it as a motion to stay or for dismissal. As a motion to dismiss, it was sustained on the ground that primary jurisdiction of the controversy lay with the insurance commissioner. The motions to dismiss of the other two defendants were also sustained.

The remaining defendants then moved for summary judgment on the same ground. Their motions were sustained.

I. *The appeal.* The special appearance, motions to dismiss, and motions for summa-

ry judgment all urged the same two jurisdictional grounds. One is the applicability of the rule of exhaustion of administrative remedies. The other is the applicability of the doctrine of primary jurisdiction. Underlying each ground is the contention that the issues raised in the petition must be presented to and decided by the insurance commissioner before the action can be maintained.

■ The distinction between these jurisdictional grounds lies mainly in the way each comes into play. It is explained in United States v. Western Pacific Railroad Company, 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126, 132 (1956):

"The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. 'Primary jurisdiction,' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views."

When the legislature has given an administrative agency jurisdiction to entertain the particular controversy, we have held the jurisdiction is exclusive and must be exhausted before resort to the courts unless a contrary intent is clearly manifested by the legislature. Northwestern Bell Tel. Co. v. Hawkeye State Tel. Co., 165 N.W.2d 771, 775–776 (Iowa 1969); Elk Run Telephone Co. v. General Telephone Co., 160 N.W.2d 311, 315 (Iowa 1968).

■ When the legislature has not delegated jurisdiction of the controversy to an agency but the controversy involves issues of fact not within the conventional experience of judges or implicates issues requiring the exercise of administrative discretion, the doctrine of primary jurisdiction is applicable. The court should route the threshold decision on those issues to the agency. Far East Conference v. United States, 342 U.S. 570, 574–575, 72 S.Ct. 492, 494, 96 L.Ed. 576, 582 (1952); see Weinberger v. Bentax Pharmaceuticals, 412 U.S. 645, 654, 93 S.Ct. 2488, 2494, 37 L.Ed.2d 235, 242 (1973) ("Threshold questions within the peculiar expertise of an administrative agency are appropriately routed to the agency, while the court stays its hand."); United States v. Philadelphia Nat. Bank, 374 U.S. 321, 353, 83 S.Ct. 1715, 1736, 10 L.Ed.2d 915, 939 (1963) ("That doctrine requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme.").

We must decide whether either the rule requiring exhaustion of administrative remedies or the doctrine of primary jurisdiction is applicable in this case.

■ A. *Exhaustion of administrative remedies.* The exhaustion rule is inapplicable unless two conditions are present. An administrative remedy must exist for the claimed wrong, and the statutes must expressly or impliedly require that remedy to be exhausted before resort to the courts. Oliver v. Iowa Power & Light Company, 183 N.W.2d 687 (Iowa 1971); Elk Run Telephone Co. v. General Telephone Co., supra.

The first inquiry here is whether the relief sought is within the jurisdiction of the insurance department. This requires identification of the claims and then examination of the statutory scheme establishing the insurance department to see whether the insurance department has power to adjudicate them.

The petition alleges a series of torts by corporate insiders. Plaintiffs ask actual and punitive damages in behalf of LeMars and its policyholders, as well as injunctive relief. The action relies on traditional common-law principles establishing the duties of corporate insiders and providing derivative and class action redress when those duties are breached. See, generally, Holi-Rest, Inc., v. Treloar, 217 N.W.2d 517 (Iowa 1974); Holden v. Construction Machinery Company, 202 N.W.2d 348 (Iowa 1972); Charles v. Epperson & Co., Inc., 258 Iowa 409, 137 N.W.2d 605 (1965); Gord v. Iowana Farms Milk Co., 245 Iowa 1, 60 N.W.2d 820 (1953), and citations.

The relevant insurance statutes are chapters 505, 515, and 521A, The Code. Insurance department regulations, chapter 11, 1973 Iowa Departmental Rules at 558–564, also bear on the issue.

The insurance department is established by chapter 505. The general powers and duties of the commissioner of insurance are defined in § 505.8. The commissioner of insurance is charged generally with supervision of insurance business in this state and enforcement of the state's insurance laws; he must adopt rules to implement that responsibility; he has a supervisory role in relation to organizational transactions of insurance corporations; and he must supervise sales of securities or evidences of interest in insurance companies. His general powers and duties, as defined in § 505.8, do not include the specific right or obligation to adjudicate and award damages in a controversy involving alleged corporate officer or director wrongdoing.

Chapter 515 governs the establishment and general operation of corporations formed to do other than life insurance business. Mutual companies are specifically covered in §§ 515.12–515.22. Various restrictions are placed on the kinds of insurance which they can write, premiums they can charge, assessments they can make, reserves they must maintain, and members they may admit. Under § 515.67, the commissioner may inquire of a chapter 515 insurance company regarding its doings and condition, and the company must answer. Conspiracies to fix rates, agents' commissions, or manner of transacting insurance business are prohibited and penalized in §§ 515.131–515.136. The provisions of chapter 515 do not reach the alleged activities which serve as the predicate for the present case.

Chapter 521A, effective July 1, 1970, governs insurance company holding systems. Control of one insurer by another insurer or by another person is an example of an insurance company holding system. § 521A.1. Transactions by which control of an insurer is acquired are subject to notice and approval by the insurance commissioner. § 521A.3. The commissioner is required by § 521A.3(4)(a) to approve a control transaction unless he finds one of several conditions to be present. He need not approve the transaction if the insurer would lose the qualification to hold a license, if its effect would be to lessen competition, if the financial condition of the acquiring party is not adequate, if the terms of the transaction are unfair and unreasonable to securityholders of the insurer, if the plans for organizational changes are unfair and unreasonable to policyholders and not in the public interest, and if the competence, experience, and integrity of those in control would be deficient.

In addition, insurers who are members of holding company systems must file registration statements with the commissioner. Current agreements, relationships, and transactions between the insurer and its affiliates must be reported. This includes purchases, sales, or exchanges of assets, transactions not in the ordinary course of business, all management and service contracts, and certain cost-sharing arrangements. § 521A.4. Material transactions by registered insurers with their affiliates must be fair and reasonable. § 521A.5. Registration statements must be amended as changes occur.

When the commissioner believes an insurer, director, employee, or agent has violated or is about to violate chapter 521A or an implementing regulation or order, he may apply to the district court for injunctive and equitable relief. § 521A.9(1). He may cause criminal proceedings to be instituted in district court. § 521A.10. And he may, after notice and hearing, suspend, revoke or refuse to renew the insurer's license or authority to do business. § 521A.12. At the time material in the present case, appeal from action of the commissioner could be taken in the Polk County District Court. A failure of the commissioner to act could be made the subject of a mandamus action in that court. § 521A.13, The Code, 1973. One now aggrieved by the actions of the commissioner may obtain judicial review under the terms of the Administrative Procedure Act. § 521A.13, The Code, 1975. Judicial review is limited to legal error. § 17A.19, The Code.

The provisions of chapter 521A are implemented by insurance department regulations, chapter 11, 1973 Iowa Departmental Rules, supra. Forms are prescribed in the regulations for disclosing a control transaction and making a registration statement.

Although plaintiffs contend the alleged relationship between LeMars and DeWitt would not constitute an insurance company holding system, we believe it does. § 521A.1, The Code. However, the alleged transaction by which control of LeMars was obtained by DeWitt antedated the effective date of chapter 521A by several months. The statutory procedure requiring disclosure of the terms of that transaction was not then applicable. The transaction was not subject to scrutiny and possible disapproval by the commissioner.

■ In addition, even if the statute were then applicable, the role of the insurance commissioner is limited to disapproval of the control transaction on the specific grounds provided. He is not granted authority to adjudicate the torts alleged in this case, nor is he authorized to award

damages. It is true he may disapprove a control transaction when he finds it is unfair or unreasonable to policyholders. Thus, as an incident of his powers he may provide a preventive administrative remedy for the wrongs alleged in this case. However, the statutory power to disapprove a control transaction is a limited power. It is not a legislative delegation to the insurance commissioner of jurisdiction over corporate insider torts, even though the commissioner is granted administrative authority to disapprove control transactions when such wrongs appear.

■ The separate registration requirements of the statute are even more limited. Defendants argue that wrongs like corporate looting or waste would come to light in the registration statement, where such transactions as management contracts must be disclosed. Yet, no adjudicative machinery is provided by which a policyholder may litigate before the insurance commissioner such wrongs as alleged corporate looting and waste. Policyholders would not even know what the registration statement showed, since it is confidential. § 521A.7, The Code. If wrongdoing incidentally comes to the commissioner's attention through disclosures in the registration statement, he may apply various sanctions or seek judicial remedy, but his initiative in doing so is the result of an inquisitorial rather than an adversary proceeding, and he does not have jurisdiction to award the traditional judicial relief sought by the plaintiffs in this case. Policyholders are not given an administrative remedy for wrongs disclosed in a registration statement, nor is the commissioner's remedy a substitute for the judicial remedy.

We do not think the statutory scheme establishing the insurance department shows a legislative delegation to the insurance commissioner of jurisdiction over the corporate wrongs alleged by plaintiffs.

■■ Nothing in the statutes denies aggrieved persons their common-law and other statutory remedies in district court. Cf.

Iron Workers Local No. 67 v. Hart, 191 N.W.2d 758, 768 (Iowa 1971). The statutes do not require resort to the insurance commissioner for attempted redress of the wrongs alleged. The fact the commissioner has power to fashion an administrative remedy based upon part or all of the same activities is not made a substitute for the right to invoke judicial machinery to seek a judicial remedy of a different kind. Oliver v. Iowa Power & Light Company, supra, 183 N.W.2d at 692.

The rule requiring exhaustion of administrative remedies is inapplicable.

█ B. *Primary jurisdiction.* Defendants also contend the doctrine of primary jurisdiction is applicable. This is the ground of the motions to dismiss and motions for summary judgment relied on by the trial court. Whether it is applicable depends on whether the purposes it serves will be aided by its application in this case. We explained those purposes in Northwestern Bell Tel. Co. v. Hawkeye State Tel. Co., supra, 165 N.W.2d at 776:

"Under this doctrine courts will not determine a controversy involving a question which is within the jurisdiction of an administrative tribunal or agency prior to the solution of that question by the administrative tribunal (1) where the question demands the exercise of administrative discretion requiring the special knowledge, experience and services of the administrative tribunal, (2) to determine technical and intricate matters of fact, and (3) where a uniformity of ruling is essential to comply with the purposes of the regulatory statute administered."

In Northwestern Bell the issue involved designation of a point of connection between the lines of a long distance telephone company and a local company. We held this determination was within the responsibility of the commerce commission, and its jurisdiction was primary because of the necessity of uniformity of ruling.

█ The doctrine of primary jurisdiction presupposes an ability of the administrative agency to adjudicate the issues of law or fact which are alleged to be appropriate for administrative resolution. Far East Conference v. United States of America, supra, and citations. We do not believe the insurance department is equipped to adjudicate the material issues of law and fact in this controversy.

In addition, the questions in this case are not technical insurance regulatory matters, like the fixing of rates. The questions do not involve administrative discretion or uniformity of administrative ruling under a regulatory statute. The outcome will depend on application of common-law corporate tort concepts, not the expertise of the insurance industry. Defendants' contrary contention is couched in generalities. They have not identified the specific administrative adjudicative mechanism which the policyholders could invoke for resolution of precise issues of law or fact in this case. They have not shown what specific issues should or could be resolved administratively. The doctrine of primary jurisdiction "is not a doctrine of futility; it does not require resort to 'an expensive and merely delaying administrative proceeding * * *.'" Local U. No. 189, Amal. Meat Cutters v. Jewel Tea Co., 381 U.S. 676, 686, 85 S.Ct. 1596, 1600, 14 L.Ed.2d 640, 647 (1965).

The purposes of the doctrine of primary jurisdiction would not be served by judicial abstention in this case. The doctrine is inapplicable. The trial court erred in sustaining defendants' motions.

The case is reversed and remanded on plaintiffs' appeal.

█ II. *The cross-appeal.* The 14 defendants whose special appearance was overruled have cross-appealed. They say they intended in their special appearance to challenge only the subject matter jurisdiction of the court. A special appearance may be used for that purpose. Rule 104(a), Rules of Civil Procedure.

■ Defendants admit they asked the trial court to do more than pass on the question of subject matter jurisdiction. In doing so they appeared generally, and the trial court was right in so holding. See George v. Gander, 261 Iowa 275, 154 N.W.2d 76 (1967).

■ In any event, defendants were not harmed by the trial court's ruling. Their jurisdictional claims were fully entertained by the trial court in ruling on their motion to dismiss. We have reviewed those claims in relation to plaintiffs' appeal and have found them to be without merit.

The case is affirmed on the cross-appeal.

III. *Plaintiffs' motion to disqualify counsel.* Plaintiffs filed two motions seeking to disqualify the law firm of Whitfield, Musgrave, Selvy, Kelly and Eddy (the law firm) from representing LeMars and De-Witt. The law firm is counsel of record for LeMars, DeWitt, Alesch, Inc., and 11 individual defendants, including officers and directors of both corporations. The first motion was filed in the trial court. It was overruled as moot when the trial court terminated the action on defendants' motions. Plaintiffs did not appeal that ruling. Instead they filed a second motion asking the same relief during the appeal process in this court. That motion was presented to two members of the court who ordered it submitted with the appeal.

The motion asks that the law firm be disqualified from representing LeMars and DeWitt, that all pleadings filed by the law firm for those parties be stricken, that past and future attorney fees to the law firm from those parties be enjoined, and that attorneys Franck and Bayne be designated lead counsel "for all plaintiff actions" in this litigation.

The motion is grounded on the principle that in a derivative action the corporation, though a nominal defendant, is the real plaintiff in interest and beneficiary of any judgment recovered. Holi-Rest, Inc. v. Treloar, 217 N.W.2d 517, 523 (Iowa 1974). Thus LeMars is the real plaintiff in interest

under three divisions of the petition. The fact the fourth division is a class action does not matter. The individual defendants are accused of various wrongs against LeMars. Under the posture of the case presented by the petition the interests of Lemars and the individual defendants are potentially antagonistic, and plaintiffs contend the corporation and individual defendants should not be represented by the same counsel.

Although plaintiffs acknowledge they are not policyholders in DeWitt, they contend that under the allegations of the petition DeWitt would have an action over against those of the individual defendants who, as officers or directors of DeWitt, participated in the wrongdoing. Therefore, they argue, DeWitt is in a potentially antagonistic position regarding those individual defendants and should also be represented by different counsel.

The law firm resists the motion on two grounds. One is a contention this court lacks jurisdiction to entertain the motion. The other is a contention the motion is premature.

A. *Jurisdiction of the motion.* In adopting Court Rule 121 establishing the Client Security and Disciplinary System on December 5, 1973, we referred to our constitutional duty to exercise supervisory control over the judicial department. In so doing we said lawyers in their role as officers of the judicial department are necessarily subject to regulation by this court. We concluded:

"This court declares that it has inherent and exclusive power to supervise the conduct of attorneys who are its officers and to prescribe reasonable conditions upon which persons may be admitted and permitted to practice in the courts of this state."

This power emanates in part from the very constitutional provision relied on by the law firm in asserting the court lacks jurisdiction of plaintiffs' motion. Article V, § 4, Constitution of the State of Iowa, provides in relevant part:

"The Supreme Court shall have appellate jurisdiction only in cases of chancery, and shall constitute a court for the correction of errors at law, * * * and shall have power to issue all writs and process necessary to secure justice to parties, and exercise a supervisory control over all inferior judicial tribunals throughout the State."

Separately, Article V, § 1, vests the judicial power in the courts. Article III, § 1, declares the judicial power may not be exercised by the other branches of government.

The universal rule is that the right to define and regulate the practice of law flows from the constitutional grant of judicial power:

"The practice of law is so intimately connected with the exercise of judicial power in the administration of justice that the right to define and regulate the practice naturally and logically belongs to the judicial department of state government." 7 Am.Jur.2d Attorneys at Law § 2.

We have long recognized this rule and its constitutional roots. In re Disbarment of Cloud, 217 Iowa 3, 250 N.W. 160 (1933); see Committee on Professional Ethics v. Bromwell, 221 N.W.2d 771, 780 (Iowa 1974) ("This court has the inherent constitutional power to license lawyers."). Our adoption of rules governing admission to the bar, the Iowa Code of Professional Responsibility for Lawyers, the client security and disciplinary system, disciplinary rules, and rules mandating continuing legal education, is premised on this constitutional power. See Court Rules 100–119, 121, and 123.

█ The right to entertain a motion to disqualify counsel in a pending proceeding is an essential concomitant of this power. Emle Industries, Inc. v. Patentex, Inc., 478 F.2d 562 (2 Cir. 1973); Richardson v. Hamilton International Corporation, 469 F.2d 1382 (3 Cir. 1972), cert. denied 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964; Handelman v. Weiss, 368 F.Supp. 258 (S.D.N.Y.1973);

Estate Theatres, Inc. v. Columbia Pictures Indus. Inc., 345 F.Supp. 93 (S.D.N.Y.1972); E. F. Hutton & Company v. Brown, 305 F.Supp. 371 (S.D.Tex.1969).

█ We have no doubt of our original jurisdiction to entertain a motion to disqualify counsel in an appeal pending in this court. We have jurisdiction of plaintiffs' motion in this case.

█ B. *The merits of the motion.* In asserting the motion is premature, the law firm contends the motion presents issues of fact which require evidentiary hearing before the motion is mature for ruling. This contention is based on a misconception that disqualification must be based on a demonstrated conflict of interest rather than a potential one. It is well established that a potential conflict of interest is sufficient. Yablonski v. United Mine Workers, 145 U.S. App.D.C. 252, 448 F.2d 1175, 1179 (1971) ("Even if we assume * * * there is no visible conflict of interest, yet we cannot be sure that such will not arise in the future."); Tucker v. Shaw, 378 F.2d 304, 307 (2 Cir. 1967) (" * * * [I]t was clearly within the discretion of the district judge to nip any potential conflict of interest in the bud."); Milone v. English, 113 U.S.App.D.C. 207, 306 F.2d 814, 817 (1962) (counsel chosen by union officers charged with misconduct are disqualified at the outset from representing the union the officers allegedly wronged); International Brotherhood of Teamsters, Etc. v. Hoffa, 242 F.Supp. 246, 256 (D.D.C.1965) ("Potential, no less than actual, conflict disqualifies counsel from serving in a double capacity, * * *.").

█ It is also well established that a potential conflict of interest exists when the same law firm attempts to represent the nominal corporate defendant in a derivative action while at the same time representing the corporate insiders accused of wrongdoing. Murphy v. Washington American League Baseball Club, Inc., 116 U.S. App.D.C. 362, 324 F.2d 394 (1963); Lewis v. Shaffer Stores Company, 218 F.Supp. 238

(S.D.N.Y.1963); 13 Fletcher, Cyclopedia of Private Corporations § 6025 (1970); see also Yablonski v. United Mine Workers, Tucker v. Shaw, Milone v. English, and International Brotherhood of Teamsters, Etc. v. Hoffa, supra. We recognized this conflict in State ex rel. Weede v. Bechtel, 244 Iowa 785, 835, 56 N.W.2d 173, 200 (1953) in holding that, "A stockholders' derivative action is one in which the corporation should take a strictly neutral part." We recognized it again in Holden v. Construction Machinery Corporation, 202 N.W.2d 348, 367 (Iowa 1972), in which a derivative claim was also involved. There we found no actual prejudice and declined to hold it was reversible error for the trial court to overrule a pretrial motion for appointment of separate counsel for the corporation. However, we noted that the appointment would have obviated some of the problems which later occurred.

There is considerable force in the law firm's argument that disqualification should await some inquiry into the merits of the action. The court is faced with a dilemma. If the action is without merit, the expense of independent counsel for the corporation is unjustified. This is an expense the policyholders ultimately would bear. Yet, if the action has merit, the expense is justified and necessary. Since the officers and directors control the management of the corporation, fair inquiry into the merits of the claim may itself be prevented unless the corporation is represented at the outset by independent counsel. Fair inquiry into the merits of the action is in the interests of the policyholders. Thus, the policyholders must either pay the price of independent counsel for the corporation or risk loss of what might otherwise be a successful case.

The court must respond to this dilemma. Although neither alternative is wholly satisfactory, we are persuaded the interests of the policyholders will be better served by requiring LeMars to be represented by independent counsel. This should assure the policyholders that the merits of the derivative action will not be obscured by a conflict of interest of corporate counsel. This benefit justifies its cost.

Disqualification in these circumstances is not a reflection upon the integrity and good faith of the law firm. It is simply a precaution we think is necessary to prevent the law firm from finding itself in the untenable position of representing adverse interests. During oral argument, the law firm offered to step aside if a conflict of interest developed. The only difference between that position and the position we take results from our belief a conflict of interest sufficient to require disqualification now exists in this case.

We think the reasoning which supports independent counsel for LeMars also supports separate independent counsel for DeWitt. The allegations of wrongdoing against DeWitt's officers and directors establish a potential conflict of interest between DeWitt and those individual defendants. On that basis, we conclude DeWitt should also be represented by independent counsel. There is an important difference, however, between the stances of LeMars and DeWitt in this action. Plaintiffs ask damages and other relief against DeWitt. So long as DeWitt is under attack in the case, it is entitled to defend itself; it is not required to be neutral. The only requirement is that DeWitt be represented by independent counsel so its best interests may be protected in the event of a difference between its interests and those of its officers and directors who have also been sued.

Plaintiffs' motion asks that independent counsel for the corporations be appointed by the court. This request is unusual in view of the traditional autonomy of parties in judicial proceedings not involving receivership or bankruptcy. However, corporations do not have the same autonomy as other parties. A corporate charter is a public franchise. The stockholders, in this case policyholders, own that franchise. One who wrongs the corporation injures the public franchise held by the policyholders. The public interest is affected.

Because of this, we have long recognized the right and obligation of the courts to vindicate wrongs done to corporations by others, whether they be officers, directors or strangers. State ex rel. Weede v. Bechtel, supra. We have authorized actions in the nature of quo warranto to be brought in the name of the State in certain situations. Rule 299, Rules of Civil Procedure. We have also permitted derivative actions. The derivative action is a unique judicial device by which those who hold the public franchise may seek redress in behalf of the corporation for wrongs done to it. Although the right to seek derivative relief is subject to abuse, it is essential as a means to permit correction of intracorporate wrongs.

In this derivative action the officers and directors who are accused of harming the interests of the policyholders will choose counsel to represent the policyholders regarding those charges unless the court does so. The issue is equitable. We can exercise our discretion to permit the corporations to choose independent counsel to represent them, or we or the trial court can select the independent counsel. See Note 74 Yale L.J. 524, 533–536 (1965); cf. Lewis v. Shaffer Stores Company, supra.

While the first alternative would respect corporate autonomy and remove the outward appearance of dual representation, it would not eliminate the substance of the problem sought to be avoided. Counsel for the corporation would be subject to the control of those accused of wrongdoing. In these circumstances the second alternative is preferable. See Niedermeyer v. Niedermeyer, [1973 Transfer Binder] CCH Fed. Sec.L.Rep. ¶ 94, 123 (D.Ore. Aug. 21, 1973). We believe the interests of the policyholders will be better protected if independent counsel is selected for each corporation by the trial court. This alternative also better serves the public interest. It is a reasonable step to assure protection of the public franchise involved. Accordingly, we sustain plaintiffs' motion insofar as it asks appointment of independent counsel for the corporations.

In view of the disposition of this appeal it is unnecessary to order any pleadings of LeMars and DeWitt to be stricken. Upon remand we direct the trial court first to appoint independent counsel for each of the corporations and then to give new counsel a reasonable period of time in which to file appropriate responsive pleadings in behalf of their respective clients.

We also deem it unnecessary to make any orders regarding attorney fees or appointment of lead counsel. As a matter of course no further fees for services to the corporations will accrue from the corporations to the law firm representing the corporate officers and directors. The question of indemnification by the corporations for officer and director attorney fees is governed by § 496A.4(19), The Code, and ultimately depends upon the outcome of the suit. We decline to enjoin payment of any fees for services to the corporations accrued to date.

We also decline to designate lead counsel. We have no doubt of the ability of counsel to sort out their respective roles. If any difficulty should arise, it can be resolved in the trial court when it occurs.

Hence, in accordance with these determinations, the motion to disqualify is sustained in part and overruled in part.

Reversed and remanded on the appeal; affirmed on the cross-appeal.

All Justices concur except MOORE, C. J., and LeGRAND, J., who dissent and RAWLINGS and REES, JJ., who take no part.

MOORE, Chief Justice (dissenting).

I concur in the majority opinion except that part of Division III B. which holds the trial court must appoint independent counsel for LeMars and DeWitt. That holding is entirely unsupported by any statute or reported case law.

Research reveals only two reported decisions directly deciding the issue of who shall

appoint counsel for the corporation when a potential conflict is found by virtue of dual representation of corporate and individual defendants.

In Yablonski v. United Mine Workers, 1971, 145 U.S.App.D.C. 252, 448 F.2d 1175, counsel for union officers were disqualified from representing the union, but appointment of new counsel was left to the union officers. The court recognized the problem addressed by the majority here, but was not inclined to interfere with the selection of counsel. At page 1182 of 448 F.2d the court says:

"We are cognizant that any counsel to represent the UMWA selected by President Boyle will be to some degree under his control. But such counsel will still only have one client—the UMWA—to represent in matters growing out of the union's affairs. Such counsel would never be professionally obligated to consider Boyle's personal interests, because they would not be representing him individually in related matters. And the extent of their labors would be gauged by the need to protect the UMWA position in this litigation."

Lewis v. Shaffer Stores Co., S.D.N.Y. 1963, 218 F.Supp. 238, involved appointment of independent counsel for the corporation in a stockholders' derivative action against corporate directors and insiders. Regarding dual representation by the law firm of Breed, Abbott & Morgan the court at pages 239, 240 states:

"The question, however, is whether Breed, Abbott & Morgan should also appear for the corporation. The answer admits that the defendant stockholder owns a majority of Williams Stock and that there are approximately 1,137 common stockholders of the corporation.

"The interests of the officer, director and majority stockholder defendants in this action are clearly adverse, on the face of the complaint, to the interests of the stockholders of Williams other than defendants. I have no doubt that Breed,

Abbott & Morgan believe in good faith that there is no merit to this action. Plaintiff, of course, vigorously contends to the contrary. The court cannot and should not attempt to pass upon the merits at this stage. Under all the circumstances, including the nature of the charges, and the vigor with which they are apparently being pressed and defended, I believe that it would be wise for the corporation to retain independent counsel, who have had no previous connection with the corporation, to advise it as to the position which it should take in this controversy. See Garlen v. Green Mansions, Inc., 9 A.D.2d 760, 193 N.Y.S.2d 116 (1st Dept. 1959); Marco v. Dulles, supra [169 F.Supp. 622 (S.D.N.Y.1959)].

"The fact that the selection of such independent counsel will necessarily be made by officers and directors who are defendants does not seem to me to present any insuperable difficulty. Plaintiff's motion is therefore granted to the extent of striking out the answer of Williams and the appearance of Breed, Abbott & Morgan as attorneys for Williams."

In 74 Yale Law Journal 525 the editor in "Independent Representation For Corporate Defendants in Derivative Suits" observes and discusses the scant number of cases on the subject. At page 533 the editor writes:

" * * * the question of how a court can implement a decree barring dual representation remains. The only solution presented by decisions to date is illustrated by the order of the Lewis case: the corporation was simply advised to 'retain independent counsel who have had no previous connections with the corporation.' "

Relying on the unreported case of Niedermeyer v. Niedermeyer, [1973 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 94,123 (D.Ore. Aug. 21, 1973), the majority orders the trial court to select independent counsel for each corporation, LeMars and DeWitt.

In Niedermeyer plaintiffs asserted defendants, some as principals and others as aiders and abettors, were liable for an alleged fraudulent scheme in connection with the sale of American Timber and Trading Co., Inc. (ATT) stock. On trial, Judge Skopil denied plaintiffs any recovery. However the court observed the evidence revealed some of the parties may have wasted corporate assets. He found a substantial conflict of interest between some plaintiffs and ATT. He announced, "I intend to appoint an independent attorney to represent the interest of ATT in this case." No authority was cited for this *sua sponte* decision. Judge Skopil delayed further trial to afford new counsel time to prepare and present any further evidence. Subsequent disposition of the case is not shown in the opinion.

Judge Skopil's opinion includes, "ATT has been liquidated and is not a going corporation." Therefore it is clear if the issue of wasted assets was to be determined appointment of counsel could only be made by the court.

Niedermeyer is no authority for the majority opinion order to the trial court to appoint counsel for LeMars and DeWitt. Each is in full operation. DeWitt is a substantive defendant. This case is only in the pleading stage.

The majority states, "The court is faced with a dilemma." If so, it should not be made worse. Who pays the court appointed counsel in this civil litigation? Must each corporation be denied choice of counsel and be required to pay expenses and fees? They may well run into several thousand dollars. Should plaintiffs be required to post a cost bond to secure payment?

The majority order for trial court appointment of counsel for each of the two corporations ignores the safeguards of the adversary process. It may be constitutionally infirm, raising questions of deprivation of property without due process of law and infringement upon right to choose counsel.

The majority holding is unprecedented, unwarranted and unwise. I would hold each corporation should select counsel having no previous connection with the corporation or any of its officers or directors.

LeGRAND, J., joins in this dissent.