Mary M. RIEFF, Individually and on Behalf of a Class of Policyholders of Allied Mutual Insurance Company, Appellant,

v.

John E. EVANS, Douglas L. Anderson, Harold S. Evans, Jamie H. Shaffer, James W. Callison, James M. Hoak, Jr., Mark W. Putney, George E. Moore, William J. Hancock, James D. Kirkpatrick, Charles I. Colby, Herschel G. Langdon, Charles F. Morgan, Hardy G. Kuykendall, Walter J. Fayle, and Allied Group, Inc., Appellees,

Allied Mutual Insurance Company, Nominal Defendant–Appellee,

Nationwide Mutual Insurance Company, Intervenor Defendant–Appellee.

No. 99–0313.

Supreme Court of Iowa.

May 31, 2001.

As Amended on Denial of Rehearing July 3, 2001.

280

Thomas D. Waterman, Robert A. Van Vooren, Terry M. Giebelstein, and Jed E. Brokaw of Lane & Waterman, Davenport, Brad J. Brady, Robert J. O'Shea, and Matthew L. Preston of Brady & O'Shea, P.C., Cedar Rapids, Jason B. Adkins and David L. Kelston of Adkins & Kelston, P.C., Boston, Massachusetts, and Daniel E. Bacine and Leslie Molder of Barrack, Rodos & Bacine, Philadelphia, PA, for appellant.

David L. Brown and John A. McClintock of Hansen, McClintock & Riley, Des Moines, and Bruce W. Foudree, Michael R. Hassan, Sarah M. Weil, and John F. Kloecker of Lord, Bissell & Brook, Chicago, IL, for appellees-directors of Allied Mutual Insurance Company.

Glenn L. Smith of Finley, Alt, Smith, Scharnberg, Craig, Hilmes & Gaffney, P.C., Des Moines, and J. William Koegel, Jr. of Steptoe & Johnson, Washington, DC, for appellee-Allied Group, Inc.

Douglas E. Gross and Harold N. Schneebeck of Brown, Winick, Graves, Gross, Baskerville, and Schoenebaum, P.L.C., Des Moines, and Michael A. Reiter, Frederick R. Ball, and Raquel daFonseca of Duane, Morris & Heckscher, L.L.P., Chicago, IL, for appellee-Nationwide Mutual Insurance Company.

Tom Riley and Hugh G. Albrecht of Tom Riley Law Firm, P.L.C., Cedar Rapids, Paul Alan Levy of Public Citizen Litigation Group, Washington, DC, and Theresa Amato of Citizen Advocacy Center, Elmhurst, IL, amicus curiae for Public Citizen, the Citizen Advocacy Center, the Coalition for Consumer Rights, and the Consumer Federation of America.

Bruce L. Braley of Dutton, Braun, Staack & Hellman, P.L.C., Waterloo, amicus curiae for the Iowa Trial Lawyers Association.

John M. (Jack) Manders of Drake University, amicus curiae as a professor.

Fred M. Haskins of Patterson Law Firm, Des Moines, amicus curiae for the Iowa Insurance Institute.

A. John Frey, Jr. of Frey, Haufe & Current, P.L.C., Clinton, amicus curiae for the National Association of Mutual Insurance Companies.

Russell L. Samson of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, amicus curiae for the Iowa Association of Business and Industry.

SNELL, Justice.

A group of policyholders, represented by Mary M. Rieff, appeal the dismissal of their lawsuit against two insurance companies and numerous individual defendants who were or are directors of Allied Mutual Insurance Company (Mutual). The defen-

dants also include Allied Group, Incorporated (Group). Mutual is a nominal defendant and Nationwide Mutual Insurance Company (Nationwide) is an intervenor defendant. A motion to dismiss the lawsuit was filed by the defendants. The district court sustained the motion to dismiss holding that the policyholders lacked standing to proceed with the lawsuit and the suit was barred by a statute of limitations. We reverse the dismissal of the policyholders' suit in part and remand for further proceedings.

## I. Background Facts and Proceedings

This appeal is from a case with many issues, parties, attorneys, claims, counts, and legal theories. Initially, the suit was brought on behalf of a mutual insurance company by its policyholder under the theory of a shareholder's derivative suit. As we stated in *Weltzin v. Nail:*

> A derivative lawsuit is unique in that the shareholders allege the company's directors have directly harmed it by their acts and omissions such that the company has suffered a loss. The shareholders indirectly assert their rights through the rights of the company.

*Weltzin v. Nail,* 618 N.W.2d 293, 295 (Iowa 2000). Later, the suit was amended to include class action claims brought individually by the policyholders. The policyholders allege a claim of "de facto demutualization" or "de facto conversion" under this action. The main thrust of both actions is that the directors of Mutual, through their association with Group, committed several breaches of duties for which the policyholders and the company itself are owed compensation. Below are the facts alleged by the policyholders in their pleading.

Allied Mutual Insurance Company incorporated Allied Group, Inc. in 1974. Mutual primarily operated as a private citizen insurer for home and automobile. Group engaged in the casualty and life insurance business. Until 1985, Group was a totally dependent subsidiary of Mutual. Group had no employees of its own, and Mutual provided for all of Group's services. Many of the directors of Mutual were also the directors of Group. Prior to 1985, Mutual owned 100% of Group's stock. In 1985, the directors, who are most of the defendants in this proceeding, offered 21% of Group's stock publicly. Rather than Mutual receiving the benefits of this sale, the proceeds totaling $16.4 million went to Group's subsidiaries. This transaction began the process that would ultimately result in a role reversal between Mutual and Group.

A pool had always existed between Mutual and Group and its subsidiaries containing the assets, profits, and premiums of their business. Initially, Mutual controlled the pool and Group received 15%. The defendant directors began to slowly increase Group's share in 1985, first to 38%, in 1987 to 41%, in 1990 to 53%, in 1992 to 60%, and in 1993 to 64%. Thus, in 1985 Mutual received 85% of the benefits from the joint pool, but by 1993 Mutual's share had decreased to 36%. Finally, in January of 1993, Mutual gave up all control of the pool to a subsidiary of Group for no consideration.

By 1989, all Mutual employees had been reclassified as Group employees, in turn making Mutual completely dependent on Group for its workforce. Eventually, in February of 1993, Mutual sold off all of Group's remaining common stock, giving up any possibility of sharing in Group's growth and success. As a result of the sell-off of Mutual's control to Group, the policyholders allege that the directors have allowed themselves several generous grants since 1985 worth many millions of dollars.

From 1985 to 1993, Mutual slowly restructured itself, which the policyholders allege benefited the individual directors, Group, and its shareholders, and was to Mutual's detriment. In all, the policyholders conclude the defendants exchanged assets worth more than $900 million at the time of the original petition for consideration of only $126 million. Further, because Mutual was essentially subsumed under Group, the policyholders argue, what in fact occurred was a demutualization.

■ Demutualization occurs when a private mutual company converts to a publicly held stock company. In order for a mutual company to do this by statutory procedure, it must follow strict guidelines ensuring fairness to its policyholders. *See* Iowa Code ch. 515G (1997) (describing mutual insurance company conversions). Mutual's policyholders argue these procedures were not followed, and they suffered harm as a result.

In December 1997, Rieff filed a derivative suit against the individual directors/officers of Mutual and Group and Group individually. She later amended her petition in June 1998 to include class claims and a class of injured policyholders. The amended petition asserts eight counts against all named defendants. The petition alleges five derivative claims and three class action claims, the main one being de facto demutualization. The petition requests relief for Mutual and its policyholders. A summary of the amended petition is included below:

Count I Breach of Fiduciary Duty (Derivative Claim);

Count II Waste of Corporate Assets (Derivative Claim);

Count III Improper Transfer of Control (Derivative Claim);

Count IV Intentional Interference with Business Advantage and Contracts (Derivative Claim);

Count V Equitable Relief (Derivative Claim);

Count VI De Facto Conversion (Class Action Claim);

Count VII Breach of Fiduciary Duty (Class Action Claim); and

Count VIII Intentional Interference with Advantageous Business and Contractual Relationships (Class Action Claim).

Nationwide intervened as a defendant in 1998 following its purchase agreement with and for Allied and its subsidiaries. The policyholders sought to enjoin this sale from going through pending their litigation. In July 1998, a hearing was held on the policyholders' motion for temporary and permanent injunction against the sale of all Allied companies to Nationwide. This motion was denied. The directors/officers, together with Group, also filed a motion to dismiss the policyholders' amended petition. They argued policyholders have no standing to bring a derivative suit, the statute of limitations bars the basis for the claims, and the policyholders have otherwise failed to state a cognizable claim for which relief can be granted.

The district court agreed with each argument made by the defendants. It granted the motion to dismiss in its entirety. The district court's opinion has caused quite a stir among those in the insurance and legal communities. Six amicus curiae briefs have been filed since the policyholders took their appeal to our court. The issue generating the most dispute is whether a policyholder has standing to bring a derivative suit on behalf of her mutual company. This right is unequivocally recognized for shareholders by state statute. Iowa Code § 490.740. A similar right for policyholders may also be found

in past precedent. *Rowen v. LeMars Mut. Ins. Co.,* 230 N.W.2d 905 (Iowa 1975) (*Rowen I*). We have never addressed the application of section 490.740 to policyholders or this section's effect on our *Rowen* jurisprudence. *See, e.g., Rowen v. LeMars Mut. Ins. Co.,* 282 N.W.2d 639 (Iowa 1979) (*Rowen II*); *Rowen I,* 230 N.W.2d 905.

The other issues on appeal question the timeliness of the action, as well as the effect of the amended petition. We are also asked to determine if de facto demutualization is a valid cause of action when being used to describe the restructuring of a mutual insurance company to the benefit of a stock company without compensation to its policyholders. Defendants further allege that the class claims fail to provide the policyholders with a right of recovery. Finally, defendant Group maintains that the policyholders' petition fails to state a claim against Group in several respects.

## II. Standard and Scope of Review

■ "A motion to dismiss tests the legal sufficiency of a plaintiff's petition." *Schaffer v. Frank Moyer Constr., Inc.,* 563 N.W.2d 605, 607 (Iowa 1997); Iowa R. Civ. P. 88(a), (f). On appeal from a motion to dismiss, we employ a limited review; it is not de novo. Iowa R.App. P. 4; *Ritz v. Wapello County Bd. of Supervisors,* 595 N.W.2d 786, 789 (Iowa 1999). "We review rulings on motions to dismiss for correction of errors at law, and we will affirm a dismissal only if the petition shows no right of recovery under any state of facts." *Barnes v. State,* 611 N.W.2d 290, 292 (Iowa 2000). The district court's decision to grant a motion to dismiss is proper only when the petition, "on its face shows no right of recovery under any state of facts." *Tate v. Derifield,* 510 N.W.2d 885, 887 (Iowa 1994).

■ We review the policyholders' "petition in its most favorable light, resolving all doubts and ambiguities in [their] favor." *Schreiner v. Scoville,* 410 N.W.2d 679, 680 (Iowa 1987). We must "accept[ ] as true the allegations in the petition." *D.M.H. by Hefel v. Thompson,* 577 N.W.2d 643, 644 (Iowa 1998). However, "facts not alleged cannot be relied on to aid a motion to dismiss nor may evidence be taken to support it." *Ritz,* 595 N.W.2d at 789; *Tate,* 510 N.W.2d at 887 ("We have held that a motion to dismiss can neither rely on facts not alleged in the petition (except those of which judicial notice may be taken) nor be aided by an evidentiary hearing." (citation omitted)).

## III. Issues on Appeal

■ A motion to dismiss should not be liberally granted. We will affirm a dismissal only if the policyholders "failed to state a claim upon which any relief could be granted under any state of supporting facts that could be established." *Schreiner,* 410 N.W.2d at 680 (citing *Murphy v. First Nat'l Bank,* 228 N.W.2d 372, 375 (Iowa 1975)). "At issue is petitioner's right of access to the district court, not the merits of his allegations." *Richards v. Iowa Dep't of Revenue & Fin.,* 454 N.W.2d 573, 574 (Iowa 1990); *accord Gradischnig v. Polk County,* 164 N.W.2d 104, 106 (Iowa 1969) ("At this stage of the litigation no question is presented as to truth of the allegations contained in the challenged pleading. The sole issue is whether plaintiffs are entitled to their day in court. . . .").

## A. Policyholder Derivative Claims

■ Ordinarily, a "motion to dismiss for lack of standing place[s] the burden on plaintiffs to show (1) a specific, personal, and legal interest in the litigation, and (2) injury." *City of Dubuque v. Iowa Trust,* 519 N.W.2d 786, 789 (Iowa 1994). Here, the issue of policyholder standing hinges

on statutory authority and its relation to our prior cases assuming standing in this area. *Compare* Iowa Code § 490.740, *with Rowen I*, 230 N.W.2d at 915–16. Specifically we must decide whether section 490.740 provides the exclusive means for all derivative suits in Iowa. If so, we will then seek to determine the scope and effect of section 490.740.

### 1. *Rowen* Jurisprudence

The policyholders argue that policyholder standing to bring a derivative suit has been established by our prior jurisprudence, notwithstanding statutory authority. It is true that we have entertained several policyholder derivative suits in our court, however, standing to bring these suits was never at issue. *See Rowen II*, 282 N.W.2d at 639; *Rowen I*, 230 N.W.2d at 905. Nonetheless, the policyholders suggest that these cases are dispositive to our determination. They argue it would be absurd to suggest now that *Rowen* does not recognize a policyholder's right to sue third parties derivatively on behalf of its company. Unfortunately, it is not that simple.

We are not in the habit of addressing issues neither party has presented. The fact that we allowed the *Rowen* cases to proceed does not automatically establish a right in policyholders to bring derivative suits. However, if our court felt we lacked jurisdiction because of standing, we could have raised that on our own motion, even if it was not an issue before us. *Troester v. Sisters of Mercy Health Corp.*, 328 N.W.2d 308, 311 (Iowa 1982).

Rather than be concerned about standing in *Rowen I*, we discussed at length the necessity for derivative suits. Our court concluded that when the corporation is a public franchise, its policyholders own it and are permitted to seek redress for

wrongs done to it on behalf of the company. *Rowen I*, 230 N.W.2d at 915–16.

> [C]orporations do not have the same autonomy as other parties. A corporate charter is a public franchise. The stockholders, in this case policyholders, own that franchise. One who wrongs the corporation injures the public franchise held by the policyholders.
>
> . . . Although the right to seek derivative relief is subject to abuse, it is essential as a means to permit correction of intracorporate wrongs.

*Id.* This language strongly suggests that our court assumed policyholders had standing to bring derivative suits against their company. Further, we recognized that the derivative action was an indispensable way for policyholders to hold their corporation's officers and directors accountable. We continued to entertain these suits and never challenged by our own motion the right of the policyholders to bring these claims. *See, e.g., Rowen v. LeMars Mut. Ins. Co.*, 357 N.W.2d 579 (Iowa 1984); *Rowen v. LeMars Mut. Ins. Co.*, 347 N.W.2d 630 (Iowa 1984).

### 2. Statutory Authority vs. Past Jurisprudence

 Not every legal right is rooted in legislative enactment. Claims can be as freely brought under precedential authority as those founded on statute. *See Benjamin v. Lindner Aviation, Inc.*, 534 N.W.2d 400, 405 (Iowa 1995) (holding that the common law treasure trove laws exist distinct from the statutory law). As such, "[w]e are obliged . . . to interpret statutes in conformity with the common law wherever statutory language does not directly negate it." *Cookies Food Prods., Inc., by Rowedder v. Lakes Warehouse Distrib., Inc.*, 430 N.W.2d 447, 452 (Iowa 1988). However, if statutory authority has preempted a right provided by case precedent, the common law must give way.

*Ganske v. Spahn & Rose Lumber Co.*, 580 N.W.2d 812, 814 (Iowa 1998). A case at common law can provide the plaintiffs with standing to pursue their action in equity. *See State ex rel. Weede v. Bechtel*, 244 Iowa 785, 811–16, 56 N.W.2d 173, 187–90 (1952).

It should be noted that our court recognized the general right to bring a derivative suit well before clear legislative authority existed providing this right to shareholders. *Id.* We reaffirmed this right one year before our decision in *Rowen I. Holi–Rest, Inc. v. Treloar*, 217 N.W.2d 517, 523–25 (Iowa 1974). Our court relied on both *State ex rel. Weede* and *Holi–Rest* to conclude:

> [W]e have long recognized the right and obligation of the courts to vindicate wrongs done to corporations by others, whether they be officers, directors or strangers.... We have also permitted derivative actions. The derivative action is a unique judicial device by which those who hold the public franchise may seek redress in behalf of the corporation for wrongs done to it. Although the right to seek derivative relief is subject to abuse, it is essential as a means to permit correction of intracorporate wrongs.

*Rowen I*, 230 N.W.2d at 916 (citations omitted). Our court recognized that the derivative suit was the basis of the policyholders' challenge before us and addressed the merits in equity. *Id.* at 915–16. For this reason, the policyholders posit that the right of a policyholder to bring a derivative action exists in legal precedent and cannot be summarily destroyed by the legislature without clear, legislative language. As such, "statutes will not be construed as taking away common law rights existing at the time of enactment unless that result is 'imperatively' required by the language of the statute." *Collins v. King*, 545 N.W.2d 310, 312 (Iowa 1996).

The defendants assert that our past jurisprudence is not controlling in this area. They argue that even if earlier supreme court decisions did at one time establish policyholder standing, the enactment of section 490.740 in 1989 overruled this line of decisions. Oppositely, the policyholders allege that the predecessor to section 490.740 was essentially identical to it, also naming only shareholders. *See* Iowa Code § 496A.43 (1975). They argue that the *Rowen* courts firmly established the right of this action to policyholders even with the language of section 490.740's predecessor available to it.

The defendants cite two statutory provisions to contest the policyholders' argument. *See* Iowa Code §§ 490.740, 490.1701 (1997). Section 490.740 acknowledges the right to bring a derivative suit. Section 490.1701 limits the application of all provisions within chapter 490, including section 490.740. The dispute surrounding these provisions are twofold: (1) Section 490.740 uses the term "shareholder" in reference to derivative suits, and (2) Section 490.1701(2) forbids chapter 490's applicability to mutual companies.

The relevant provisions are provided below.

490.740. Procedure in derivative proceedings

1. A person shall not commence a proceeding in the right of a domestic or foreign corporation unless that person was a *shareholder* of the corporation when the transaction complained of occurred or unless that person became a shareholder through transfer by operation of law from one who was a shareholder at that time.

*Id.* § 490.740(1) (emphasis added).

490.1701. Application to existing corporations

. . . .

2. Unless otherwise provided, this chapter does not apply to ... a corporation organized on the *mutual plan* under chapter 491. . . .

*Id.* § 490.1701(2) (emphasis added).

Chapter 491 deals with "corporations for pecuniary profit." Mutual has been organized under this chapter. Chapter 491 does not have a comparable derivative suit section. As such, chapter 491 neither approves nor disapproves of derivative suits. We agree with the defendants that section 490.740 cannot on its terms provide policyholders with the derivative right they are seeking. However, section 490.740 does not purport to be the exclusive provider of derivative remedy for every corporate context. Accordingly, if there is some other authority for policyholders to bring a derivative suit, no statute in the Iowa Code would prohibit it.

We feel our past cases, especially our *Rowen* jurisprudence, provide that authority. We do not agree that because the *Rowen* cases were decided before section 490.740 was enacted, section 490.740 overruled *Rowen* when it became effective. How can section 490.740 overrule *Rowen*, which deals with a mutual company derivative suit, when by its own language, chapter 490 does not apply to mutual companies? *See id.* § 490.1701(2). Quite simply, it cannot. *Rowen* assumed that policyholders have standing and nothing in section 490.740 overrules that right.

3. National Treatment of Policyholder Standing

Policyholder standing to sue derivatively is a right much recognized by other jurisdictions. *See generally* Theodore Allegaert, Comment, *Derivative Actions by Policyholders on Behalf of Mutual Insurance Companies*, 63 U. Chi. L.Rev. 1063, 1070–71 (1996) [hereinafter Allegaert] ("[T]here

is ample precedent for allowing policyholder derivative actions to proceed. . . . Virtually all judicial opinions in insurance derivative actions ... have merely assumed ... standing."). The United States Supreme Court has also recognized that the derivative suit is available to policyholders because of their similarity to shareholders. *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 522, 67 S.Ct. 828, 830, 91 L.Ed. 1067, 1072–73 (1947). "The stockholder's derivative action, *to which this policyholder's action is analogous,* is an invention of equity to supply the want of an adequate remedy at law to redress breaches of fiduciary duty by corporate managers." *Id.* (emphasis added).

Courts around the nation have either explicitly provided this right or assumed it was available to policyholders. *Koster v. (American) Lumbermens Mut. Cas. Co.*, 153 F.2d 888, 890–91 (2d Cir.1946), *aff'd,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947); *Elgin v. Alfa Corp.*, 598 So.2d 807, 810–12 (Ala.1992); *Lower v. Lanark Mut. Fire Ins. Co.*, 151 Ill.App.3d 471, 473, 104 Ill.Dec. 341, 343, 502 N.E.2d 838, 840 (1986); *O'Donnell v. Sardegna,* 336 Md. 18, 32, 646 A.2d 398, 404–05 (1994); *Harhen v. Brown,* 46 Mass.App.Ct. 793, 808, 814–15, 710 N.E.2d 224, 235, 238–39 (1999), *rev'd on other grounds by* 431 Mass. 838, 730 N.E.2d 859 (2000); *Pathfinder Life Ins. Co. v. Livingston,* 140 Neb. 354, 299 N.W. 537, 539 (1941); *Amabile v. Lerner,* 64 N.J.Super. 507, 511–12, 166 A.2d 603, 605 (1960); *Lesser v. Burry,* 132 Ohio App.3d 319, 322, 724 N.E.2d 1227, 1229 (1999); *Drain v. Covenant Life Ins. Co.*, 454 Pa.Super. 143, 152–56, 685 A.2d 119, 124–26 (1996). Further, several courts have used our *Rowen* jurisprudence to persuade them that policyholders have standing. *See O'Donnell,* 646 A.2d at 404; *Harhen,* 710 N.E.2d at 239.

Finally, we have found no court that has expressly said this right is unavailable to

policyholders absent controlling statutory direction. Rather, courts have been sensitive to the necessity of such suits "to deal fairly and competently with those seeking relief for wrongs done." *Harhen*, 710 N.E.2d at 234. "With respect to its cause of action against a faithless director, the company is a trustee for the policyholders who will benefit by its recovery of diverted assets." *Koster*, 153 F.2d at 890.

> Usually the wrongdoing officers also possess the control which enables them to suppress any effort by the corporate entity to remedy such wrongs. Equity therefore traditionally entertains the derivative or secondary action....
>
> The cause of action which such plaintiff brings before the court is not his own but the corporation's. It is the real party in interest and he is allowed to act in protection of its interest somewhat as a "next friend" might do for an individual, because it is disabled from protecting itself.

*Koster*, 330 U.S. at 522–23, 67 S.Ct. at 830–31, 91 L.Ed. at 1073 (footnote omitted). Hence, "[i]t will not do to construct a system which permits the foreclosure of relief merely at the request of those who are, or may be, in league with the wrongdoers...." *Harhen*, 710 N.E.2d at 234–35.

■ We find that policyholders have standing to hold third parties accountable to their corporation by derivative suit. Nothing in chapter 490 prohibits this power or overrules several years of precedent indicating this as an authorized policyholder action. Moreover, we are persuaded that a suit in equity gives our court more leeway to address issues that would not ordinarily be available to policyholders otherwise. *See Koster*, 330 U.S. at 522, 67 S.Ct. at 830, 91 L.Ed. at 1072–73. Accordingly, we reverse the district court's dismissal of these derivative claims for lack of standing.

## B. Alleged Procedural Defects of Pleading

Initially, we address two possible procedural defects: (1) The policyholders did not originally plead the class claims and now seek to amend their petition more than five years after any alleged act of misconduct occurred; and (2) The majority of the alleged acts of misconduct to support the derivative and class claims occurred more than five years prior to the filing of the original 1997 petition.

### 1. The Amended Class Claims

■ The original petition filed on December 31, 1997 only asserted derivative claims. Mary Rieff was also not a named plaintiff in a class capacity. In June of 1998, the petition was amended to include Rieff, asserting on behalf of a class of policyholders an additional three counts brought as class claims. To properly amend a petition, the amendment must relate back to the original petition. Generally, relation back determinations are governed by Iowa Rule of Civil Procedure 69(e). *See Porter v. Good Eavespouting*, 505 N.W.2d 178, 181 (Iowa 1993) (discussing an earlier version of Rule 69(e)). However, we have recognized that when the amended petition seeks to add a new plaintiff, we are not strictly bound by this rule. *Ezzone v. Riccardi*, 525 N.W.2d 388, 399–400 (Iowa 1994).

The relation back rule is founded on notice. *Estate of Kuhns v. Marco*, 620 N.W.2d 488, 493–94 (Iowa 2000). This is "to ensure that any amendment to a pleading made after the statute of limitations has expired does not cause the type of prejudice to the defendant sought to be avoided by the statute of limitations." *Id.* at 494. Here, Rieff was added as a plaintiff on behalf of a class of policyholders. The acts of misconduct alleged on behalf of

the corporation in the derivative claims are the same acts of misconduct providing the basis for the class claims. In the original petition, the defendants were placed on notice that specific actions wronged the corporation. In the amended petition, these same acts were also used to assert that the policyholders themselves suffered special injury.

We have stated: "The notice required under the relation back doctrine relates to notice that is sufficient to permit a defendant to prepare a defense to an action on the merits." *Id.* at 495. The creation of a class in the present case added additional plaintiffs, but the core acts of misconduct remained the same. In this regard, we will find relation back as long as "the underlying claims remain unchanged." *Id.* at 496. In the present case, three new claims were added along with additional plaintiffs. "Amendments that add claims along with new plaintiffs would require an additional analysis consistent with the purpose of rule 69(e) as well as the language of the rule." *Id.* We need to determine then if the notice purpose and the language of Rule 69(e) are met before we can conclude the amendment relates back.

Notice is not a problem here because the defendants already knew what conduct they needed to defend against. Whether it was against Mutual as a whole or its policyholders does not change the notice determination. Moreover, no responsive pleading had been filed prior to this amended petition. As such, our rule states: "A party may amend a pleading once as a matter of course at any time before a responsive pleading is served. . . ." Iowa R. Civ. P. 69(d). Rule 69(e) further notes:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the

original pleading, the amendment relates back to the date of the original pleading.

Iowa R. Civ. P. 69(e). Clearly the class claims arise out of the same conduct and transactions enunciated in the derivative claims. As such, the amended petition relates back to the original petition for purposes of this appeal even though a new class of plaintiffs and class claims were added.

2. Statute of Limitations

■ Generally, the defense of statute of limitations is affirmatively asserted by a responsive pleading. *Davis v. State,* 443 N.W.2d 707, 708 (Iowa 1989); *Pride v. Peterson,* 173 N.W.2d 549, 554 (Iowa 1970). However, the statute of limitations bar may be raised by a motion to dismiss. *Clark v. Miller,* 503 N.W.2d 422, 423 (Iowa 1993). "[W]hen it is obvious from the uncontroverted facts shown on the face of the challenged petition that the claim for relief was barred when the action was commenced, the defense may properly be raised by a motion to dismiss." *Davis,* 443 N.W.2d at 708.

■ We think that the applicable statute of limitations is five years. *See* Iowa Code § 614.1(4). Actions "founded on unwritten contracts, those brought for injuries to property, or for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery, . . . [must be brought] within five years." *Id.* The policyholders make a half-hearted effort to suggest that their claims are founded on written contract and deserve a ten-year statute of limitations. *See id.* § 614.1(5). However, they point to no viable written contract in their petition to support their contention. For instance, the policyholders are not alleging Mutual was actually unable to fulfill the requirements of their policies. "Where the liabili-

ty cannot be shown by a writing, it is reasonable to say as a matter of law that an action on such liability is founded on an unwritten rather than a written contract." *Matherly v. Hanson*, 359 N.W.2d 450, 454–55 (Iowa 1984) ("In order for a cause of action to be founded upon a contract in writing, the *instrument itself must contain an undertaking to do the thing for the non-performance of which the action is brought*." (citations omitted)).

When the original petition was filed on December 31, 1997, only two acts of misconduct had occurred within five years. In January of 1993, Mutual's directors surrendered Mutual's remaining control of the asset pool to Group and its subsidiaries for no consideration. In February of 1993, Mutual's directors sold off its remaining shares in Group. All other incidents of improper conduct occurred more than five years before December 31, 1993, the earliest one occurring in 1985. Barring any special exception, only the 1993 incidents may be used by this court to determine if the petition could support any right of recovery. The policyholders posit two reasons why the statute of limitations is not a barrier to any alleged act of misconduct: (1) fraud and (2) the discovery rule.

### a. Fraud

The policyholders maintain fraud kept them from discovering the effect of the defendants' alleged misconduct. There is evidence that the events were noted in proxy statements made to Group's shareholders. However, no similar disclosure was made to Mutual's policyholders. The pleading indicates that two audits of these activities were conducted by the insurance commissioner's office of Iowa. No corporate-structure-changing events were detected by either audit. The second audit, conducted in December of 1994 incorrectly concluded that the pooling agreement remained prorated. In reality, any share to the pool Mutual once owned had already been surrendered to Group and its subsidiaries. By the time of the 1994 audit, Mutual no longer maintained any control of the pool.

Mutual received a draft of the commissioner's report for its approval. Neither it nor its directors corrected this error on the report. Mutual allowed the commissioner to errantly conclude that it still had a share of the pool. The import of this nonaction, the policyholders claim, is that the report portrays Mutual as part of the profit sharing arrangement to current and prospective policyholders, *i.e.*, the report does not indicate that Group's shareholders are receiving the benefits from Mutual's business. It also does not recognize that Mutual no longer has control of its own operations and is subservient to Group and its shareholders, as opposed to maintaining the autonomy and control over Group it once had. The alleged true effect of these transactions was not discovered until September of 1997 by an independent insurance expert.

We recognize that fraudulent concealment can toll the applicable statute of limitations. In this regard, to toll the statute of limitations,

> the plaintiff carries the burden of either (1) proving "that the defendant affirmatively concealed the facts on which the plaintiff would predicate [the] cause of action," or (2) proving "a confidential or fiduciary relationship exists between the person concealing the cause of action and the aggrieved party" combined with proof that defendant breached the duty of disclosure.

*McClendon v. Beck*, 569 N.W.2d 382, 385 (Iowa 1997) (alteration in original) (citations omitted). Where a plaintiff can show there is a fiduciary relationship, no affirmative concealment need be pled. The pol-

icyholders allege the defendants had a fiduciary duty to disclose these actions to Mutual's policyholders. In such a case, mere silence may be enough to equal fraudulent concealment. Both the existence of a duty and the failure to disclose the transactions to Mutual's policyholders have been sufficiently pled here as to Mutual's defendant-directors.

However, whether a fiduciary relationship exists between the policyholders of Mutual and the directors of Group and Group itself is a difficult question for resolution by a motion to dismiss. "Because the circumstances giving rise to a fiduciary duty are so diverse, any such relationship must be evaluated on the facts and circumstances of each individual case." *Kurth v. Van Horn*, 380 N.W.2d 693, 696 (Iowa 1986). While it is true that "the corporate officer is a fiduciary to the shareholders" the policyholders of Mutual seek to impose that duty on the directors of Group, as well as Group individually. *See* Black's Law Dictionary 640 (7th ed.1999).

 Clearly, Mutual's directors owe a fiduciary duty to its policyholders. *See Rowen II*, 282 N.W.2d at 654; *State ex rel. Weede*, 244 Iowa at 804, 56 N.W.2d at 183. The question becomes do those directors in their capacity as Group's directors, and therefore, Group itself owe a similar duty under these unique circumstances and corporate arrangements? *Rowen II* suggests "all who assist or cooperate in the breach of fiduciary duties whether directors or not are liable for the resulting damage." *Rowen II*, 282 N.W.2d at 654. As such, we find that the policyholders have sufficiently pled the existence of a fiduciary relationship in every defendant to survive this stage of the case. Because facts of fraudulent concealment and this doctrine's application here have also been sufficiently pled, we feel there is a genuine question as to when the statute of limitations began to run.

b. The Discovery Rule

 Regardless of their ability to prove fraud, the policyholders assert that the statute of limitations for these alleged acts of misconduct did not begin to run until they were discovered by the policyholders. "In civil cases, under the discovery rule, the statute of limitations begins to run when the injured party has actual or imputed knowledge of the facts that would support a cause of action." *State v. Wilson*, 573 N.W.2d 248, 253 (Iowa 1998). Stated another way, "a claim does not accrue until the plaintiff knows or in the exercise of reasonable care should have known both the fact of the injury and its cause." *Woodroffe v. Hasenclever*, 540 N.W.2d 45, 47 (Iowa 1995).

The policyholders maintain that they were given no notice or disclosure of the transactions that eventually turned formerly independent Mutual into an entity totally dependent on a stock company. They suggest it was not reasonable for them to be put on notice by proxy statements provided to Group's shareholders. And due diligence on their part could not have discovered the effect of the transactions because even the Iowa Insurance Commissioner could not uncover what had transpired. The policyholders assert they were given no cause to prompt further investigation until 1997 when an independent insurance expert noted the evolution.

With these facts of inability for discovery pled, coupled with allegations of fraud, the policyholders have sufficiently placed the onset of the statute of limitations in dispute. When such is the case, a dismissal of the petition based on statute of limitations grounds is not appropriate. *Pride*, 173 N.W.2d at 554.

c. Miscellaneous Defenses to the Class Claims

The defendants argue that the claim alleging de facto demutualization should be dismissed because it is not a viable basis for recovery in Iowa. They further suggest that the class claims are really derivative claims in sheep's clothing. More specifically, the defendants allege Count VIII fails to state a claim for intentional contractual interference and should be dismissed on this ground as well as derivative grounds. Finally, defendant Group alleges that Counts III, V, and VI of the amended petition fail to state a claim against Group and should be dismissed as to Group. Without passing judgment on the merits of the policyholders' claims, we will determine whether they could provide any right of recovery.

■■■ At the outset, we should note that Iowa is a notice pleading state. Iowa R. Civ. P. 69(a).

> "Since the advent of notice pleading under Iowa Rule of Civil Procedure 69(a), it is a rare case which will not survive a [motion to dismiss]. As a result, disposition of unmeritorious claims in advance of trial must now ordinarily be accomplished by other pretrial procedures which permit narrowing of the issues and piercing of the bare allegations contained in the petition."

*Haupt v. Miller*, 514 N.W.2d 905, 909 (Iowa 1994) (quoting *Am. Nat'l Bank v. Sivers*, 387 N.W.2d 138, 140 (Iowa 1986)). Very little is required in a petition to survive a motion to dismiss. *See Smith v. Smith*, 513 N.W.2d 728, 730 (Iowa 1994) ("A petition gives 'fair notice' if it informs the defendant of the incident giving rise to the claim and of the claim's general nature."). We do not require a "pleading of ultimate facts that support the elements of the cause of action; however, facts sufficient to apprise the defendant of the inci-

dent must be included in the petition in order to provide 'fair notice' of the claim asserted." *Schmidt v. Wilkinson*, 340 N.W.2d 282, 283 (Iowa 1983).

■■■ Further, we do not require a petition to allege a specific legal theory. Iowa R. Civ. P. 69(b). A "pleading 'is sufficient if it apprises of the incident out of which the claim arose and the mere general nature of action.'" *Haugland v. Schmidt*, 349 N.W.2d 121, 123 (Iowa 1984) (quoting *Northwestern Nat'l Bank v. Metro Ctr., Inc.*, 303 N.W.2d 395, 401 (Iowa 1981)). Under Rule 69's requirement that the petition set forth a claim for relief, the claim is not the equivalent of a cause of action. Obviously, the claims asserted must be capable of recovery. Once that is established, a prima facie showing will suffice. *Wilkinson*, 340 N.W.2d at 284.

1. De Facto Demutualization

■■■ Because of the shift of power and control from Mutual to Group, the policyholders argue a de facto conversion or demutualization of Mutual into a stock company occurred. The policyholders and defendants both presented two very different definitions of a demutualization in oral argument. The defendants argued that when a demutualization occurs, the mutual company ceases to exist as an insurance company necessitating the distribution of surplus to its displaced policyholders. The company loses its insurance license and no longer functions as an insurance company. This very limited definition is important because here, Mutual still exists and honors its policies. Under this definition, Mutual could not have demutualized.

Conversely, the policyholders defined a demutualization as a conversion of an enterprise from mutual to stock ownership. All business and control becomes founded in stock, but the company itself persists

and distributes policies. This broader definition is important because it recognizes that the company can continue to serve mutual functions, but is now controlled by stock ownership. Here, the policyholders plead that Mutual continues to operate as a mutual company but no longer has any right to control or profits. It has effectively been made subservient to the Group stock company. Under this definition, Mutual may have demutualized.

The Iowa Legislature has described the effect of a demutualization.

The successor stock company is a continuation of the mutual insurer and the conversion does not annul or modify any of the mutual insurer's existing suits, contracts, or liabilities except as provided in the approved conversion plan. All rights, franchises, and interests of the mutual insurer in and to property, assets, and other interests shall be transferred to and shall vest in the successor stock company and the successor stock company shall assume all obligations and liabilities of the mutual insurer.

Iowa Code § 515G.9. This definition is particularly important because it assumes the mutual company lives on—what changes is that the interest in property and assets of the mutual company are now vested in stock ownership. Mutual's policyholders assert that this is not unlike what happened here when Mutual gave all of its employees and its share of the profit pool to Group. Most of the consideration made from these transfers was provided to Group, not Mutual. Our review of the pleadings and supporting arguments leads us to conclude that the policyholders have pled sufficient facts to create a question as

to whether Mutual did demutualize.[1] Dismissal for the opposite conclusion was inappropriate.

## 2. The Validity of Counts VI–VII as Class Claims

The defendants allege the class claims should be dismissed because they are really derivative in nature. Because we have analogized policyholders to shareholders for purposes of bringing a derivative suit, we feel it is also appropriate to apply the factors for determining the validity of a shareholder's class claims to these policyholders' class claims. We first recognize,

"[a]s a matter of general corporate law, shareholders have no claim for injuries to their corporations by third parties unless within the context of a derivative action.

There is, however, a well-recognized exception to the general rule: a shareholder has an individual cause of action if the harm to the corporation also damaged the shareholder in his capacity as an individual rather than as a shareholder."

*Engstrand v. West Des Moines State Bank*, 516 N.W.2d 797, 799 (Iowa 1994) (alteration in original) (citation omitted). The policyholders cannot assert injury to the corporation under the guise of a class claim. Individual injury is the disputed contention in regard to the class claims here. As such,

in order to bring an individual cause of action for direct injuries a shareholder must show that the third-party owed him a special duty *or* that he suffered an

1. We do not create a new cause of action. We hold that if the policyholders can prove an improper conversion occurred that is contrary to Iowa law, they may assert their injury under the recognized tort of conversion. The "de facto" label is in place at this point because the policyholders as yet have been unable to show Mutual did demutualize, which, if such can be shown, may entitle them to some relief.

injury separate and distinct from that suffered by the other shareholders.

*Id.* (citation omitted). To distinguish these claims from their derivative claims, the policyholders must plead sufficient facts to show either that the defendants owed them a *special duty* or that every policyholder involved in the class suffered a *special injury.*

The defendants argue that the class claims do not fall under either *Engstrand* criterion. We are not convinced. If a mutual company would like to demutualize, it must follow statutory steps to that end. *See* Iowa Code ch. 515G. Some of those steps include providing notice and a vote in this decision to its policyholders. *Id.* §§ 515G.4, .6. Additionally, the policyholders will then receive some form of payout from this approved conversion, *e.g.,* through stock offers or dividends. *Id.* § 515G.3. These steps are not discretionary, but required. With an affirmative responsibility to disclose its intentions and seek approval from policyholders, as well as compensate them upon conversion, this creates a special duty not ordinarily cognizable between a mutual corporation and its policyholders.

We have recognized that when a special duty is present, the shareholders suffer a harm not suffered by the corporation itself and have an individual action against the corporation.

> [W]hen there exists a special duty to the shareholder, outside of duties to the corporation, breach of that duty individually harms the shareholder and suit may be brought in that capacity. To this end, plaintiffs argue the interference with contract was specifically directed at them, not the corporation. Because of this, they claim to possess their own action.

We agree.

*Ezzone,* 525 N.W.2d at 395 (citing *Cunningham v. Kartridg Pak Co.,* 332 N.W.2d 881, 883 (Iowa 1983)). Here, the alleged payout the policyholders would have received given a legal demutualization was never something the corporation was entitled to. If, as the policyholders would like to prove, the corporation demutualized without following those statutory requirements, the only parties injured were the policyholders, not the corporation.

Given the above discussion then, at the very least, Count VI, the de facto conversion claim, cannot be derivative because there was a special duty and no corporate injury. Clearly, Mutual itself could not sue its directors for improperly demutualizing when it suffered no injury. This is true because the directors are not required to compensate the mutual company under the conversion plan. As such, it was error to dismiss Count VI.

As for Count VII, the plaintiff alleges that the individual defendants owed the plaintiff and the members of the class of policyholders fiduciary duties by reason of their positions as directors of Mutual. The alleged duties include duties of care, fidelity, loyalty, and diligence in the management and administration of the company's affairs. These duties were allegedly breached by the defendant-directors and Group by their transfer gradually and ultimately, en toto, of the surplus of Mutual to Group. This resulted in the elimination of any possibility that the policyholders could benefit from the surplus by receiving reduced premiums or a declared dividend. The plaintiff asserts this scenario as a special injury to her and the policyholders as a class, which is separate from the effect on Mutual as a corporation. The loss of the surplus of Mutual by its transfer to Group obviously injured Mutual by diminishing its assets. However, policy claims presumably would still be honored.

But the policyholders assert that they were separately injured as a class by this transfer because it destroyed the only fund and basis from which they could benefit from profitable business years through the declaration of dividends or reduced premiums.

Although this claim is somewhat entwined with Count VI and the derivative claim, we believe that enough separateness is shown to stand alone and survive a motion to dismiss. We also recognize that a breach of fiduciary duty is generally recognized as a derivative claim. *See Weltzin,* 618 N.W.2d at 299; *Cunningham,* 332 N.W.2d at 883. However, under the unusual circumstances of the fact pattern alleged, we find the plaintiffs have pled enough facts to distinguish the normal fiduciary duties owed to Mutual as a corporation from that owed to the policyholders. *Cf. Engstrand,* 516 N.W.2d at 799–800. Because our pleading rules include an allowance for alternative pleadings, we are further persuaded that this claim should survive the present stage. Iowa R. Civ. P. 69(b). Thus, it was error to dismiss Count VII.

■ Finally, Count VIII is brought as a claim of intentional interference with advantageous business and contractual relationships. At this point, we must recognize that shareholders and policyholders are not entirely synonymous with each other. There are many similarities, and for purposes of a derivative suit, they share enough qualities to provide standing to policyholders. However, there is one fundamental difference between shareholders and policyholders: Shareholders have an absolute stake in the corporation's future business and contracts because these areas affect the value of their investment and the amount of profit they will share. On the other hand, policyholders are more like creditors of a corporation in that their interest is ensuring the corporation has enough assets to satisfy the terms of their policies. *See generally* Allegaert, 63 U. Chi. L.Rev. at 1067–74.

If the directors of a mutual corporation interfere with its ability to conduct business and enter into contracts, this injures the corporation directly, and only indirectly, the policyholders. This is akin to a corporate waste claim, which is a classic derivative injury. *Whalen v. Connelly,* 545 N.W.2d 284, 292 (Iowa 1996) ("The claim is derivative in nature because [the plaintiff] was not injured 'directly or independently' of the partnership."); *see also Economy Roofing & Insulating Co. v. Zumaris,* 538 N.W.2d 641, 652 (Iowa 1995) (holding intentional interference claim against the former officer of a company rightfully asserts the corporation's injury). Under such a scenario, there is no special, individual injury distinct from the corporation's. Moreover, this claim was correctly brought derivatively, which our holding today allows the policyholders to assert. Because we find this claim was properly dismissed because of its derivative nature, we pass no judgment on the defendants' assertion that it failed to state a claim upon which relief could be granted.

### 3. Issues Raised by Group

Defendant Group maintains that Counts III, V, and VI fail to give Group notice that these claims are made against Group and should therefore be dismissed. We find no merit to this contention. Each claim specifically references all defendants generally. This is enough to put Group on notice that each claim is being asserted against it. *See, e.g., Kleman v. Charles City Police Dep't,* 373 N.W.2d 90, 94 (Iowa 1985). Additionally, Group has failed to allege any prejudice that may support its contention. *See West v. Hawker,* 237 N.W.2d 802, 806 (Iowa 1976). Group also

suggests these claims fail to state a claim against Group and should be dismissed for that reason. We have already held the policyholders have pled sufficient facts of a fiduciary duty owed by Group to the policyholders, as discussed in our opinion regarding fraud, such that these claims are sufficiently pled against Group to survive dismissal at this stage. Whether the policyholders will be successful in placing culpability on Group with these claims is not before the court on a motion to dismiss.

IV. Conclusion

Today we hold that policyholders have standing to assert derivative claims against their mutual company. We also find that dismissal of the amended petition on the basis of the statute of limitations is not founded at this time. We agree that a five-year statute of limitations is applicable here, but hold that the policyholders have pled sufficient facts to question when the statute began to run. We determine that the amended petition relates back to the original petition. We also hold that the theory of de facto conversion and breach of fiduciary duty may be asserted by this class of policyholders. Thus, in regard to Counts I–VII, the policyholders have alleged sufficient facts to survive dismissal at this stage.

The remaining class claim asserted by the policyholders was improperly pled. Intentional interference with business and contracts is a derivative claim under these facts. We affirm the district court's dismissal of this class claim.

Accordingly, the dismissal of Counts I–VII is reversed. The dismissal of Count VIII is affirmed.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

All justices concur except CARTER and TERNUS, JJ., who take no part.