Mary M. RIEFF, Appellee,

v.

John E. EVANS, Douglas L. Anderson, Harold S. Evans, Jamie H. Shaffer, James W. Callison, James M. Hoak, Jr., Mark W. Putney, William J. Hancock, James D. Kirkpatrick, Charles I. Colby, George E. Moore, Herschel G. Langdon, Charles F. Morgan, Hardy G. Kuykendall, Walter J. Fayle, Allied Group, Inc., and Nationwide Mutual Insurance Company, Appellants,

and

Allied Mutual Insurance Company, Defendant.

No. 02–0727.

Supreme Court of Iowa.

Dec. 17, 2003.

John A. McClintock and David L. Brown of Hansen, McClintock & Riley, Des Moines, and Michael R. Hassan and Bruce W. Foudree of Lord, Bissell & Brook, LLP, Chicago, Illinois, for individual appellants.

J. William Koegel, Jr. and Elizabeth Johnson Dunaway of Steptoe & Johnson, LLP, Washington, D.C., and Glenn L. Smith and Tamara K. Hackmann of Finley, Alt, Smith, Scharnberg, Craig, Hilmes & Gaffney, P.C., Des Moines, for appellant Allied Group, Inc.

Harold N. Schneebeck of Brown, Winick, Graves, Gross, Baskerville & Schoenebaum, Des Moines, and Michael A. Reiter and Frederick R. Ball of Duane Morris, LLC, Chicago, Illinois, for appellant Nationwide Mutual Insurance Company.

Brad J. Brady and Matthew L. Preston of Brady & O'Shea, P.C., Cedar Rapids, Thomas D. Waterman, Terry M. Giebelstein, and Nathan Clark of Lane & Waterman, Davenport, Daniel E. Bacine and Leslie Molder of Barrack, Rodos & Bacine, Philadelphia, Pennsylvania, and Jason B. Adkins and David L. Kelston of Adkins, Kelston & Zavec, P.C., Boston, Massachusetts, for appellee.

Ray Johnson of Johnson Law Firm, West Des Moines, and F. Paul Bland, Jr. and Victoria W. Ni, Washington, D.C., for amici curiae Trial Lawyers for Public Justice and Association of Trial Lawyers of America.

Bruce R. Pfaff of Bruce R. Pfaff & Associates, Ltd., Chicago, Illinois, Patrick C. Simek of Law Offices of Patrick C. Simek, Lubbock, Texas, and John M. Bickel of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for amicus curiae American Board of Trial Advocates.

David L. Baker of Riccolo & Baker, P.C., Cedar Rapids, for amicus curiae Iowa Trial Lawyers Association.

LARSON, Justice.

The defendants appeal and the plaintiff cross-appeals from a district court ruling on the plaintiff's demand for a jury trial. The district court granted a jury trial as to one issue, but denied it as to another. The defendants were granted an interlocutory appeal, and the plaintiff cross-appealed. We affirm on the defendants' appeal, reverse on the plaintiff's cross-appeal, and remand for further proceedings.

## I. *Facts and Prior Proceedings.*

This plaintiff, representing shareholders of Allied Mutual Insurance Company (Mutual), sued various parties, including Allied Group, Inc. (Group), and several individuals for damages arising out of alleged mismanagement of Mutual's financial affairs. According to the petition, Mutual conveyed to Group assets worth more than $900,000,000 for $126,000,000. Until 1985 Group was a totally dependent subsidiary of Mutual. However, in 1985 a transaction began a process that "would ultimately result in a role reversal between Mutual and Group." The plaintiff contends this role reversal benefited the directors, Group, and Group's shareholders at the expense of Mutual's shareholders and policyholders.

The plaintiff's petition asserted both direct and derivative claims. Counts I through V are clearly derivative claims, as to which there is no right to a jury trial,

and those counts are not involved in this appeal. Count VI incorporated by reference the factual allegations of the first five counts and asserted a class-action claim for "de facto" conversion by the defendants. Count VII is a class-action claim for breach of fiduciary duty. The defendants filed motions to dismiss, which the court sustained as to all eight counts. We reversed as to Counts I to VII in *Rieff v. Evans,* 630 N.W.2d 278, 295 (Iowa 2001) (*Rieff I*), and remanded the case to the district court.

Following the remand, the defendants filed a motion to strike the plaintiff's jury demand under Counts VI and VII. They argue first that these counts raise equitable issues, as to which the plaintiff has no right to a jury trial. They further argue that, even if those counts are at law, they present such complexity that any right to a jury trial must yield to the defendants' right to due process. They base this argument on their interpretation of *Weltzin v. Nail,* 618 N.W.2d 293 (Iowa 2000). The district court denied the motion to strike the jury demand on Count VI, but sustained it as to Count VII.

## II. *The Complexity Issue.*

The defendants contend the claims in this case are so complex they cannot competently be resolved by a jury, despite this constitutional assurance of jury trials:

> The right of trial by jury shall remain inviolate; but the general assembly may authorize trial by a jury of a less number than twelve in inferior courts; but no person may be deprived of life, liberty, or property, without due process of law.

Iowa Const. art. I, § 9. A comparable right to a jury trial is found in the Seventh Amendment of the United States Constitution: "The right of trial by jury shall be preserved...."

We said in *Rieff I* that "[t]his appeal is from a case with many issues, parties, attorneys, claims, counts, and legal theories." *Rieff I,* 630 N.W.2d at 282. The defendants portray an even more daunting picture of the case:

> In her 36–page, 104–paragraph Amended Petition, Plaintiff challenges in excess of ten separate, complex financial transactions that took place over an eight-year period between 1985 and 1993. These challenged transactions include a "pooling agreement" between Allied Mutual, Allied Group, and other affiliated organizations; administration of the pooling agreement; a leveraged employee stock ownership plan (ESOP); executive equity incentive plans; stock options; the formation and acquisition of various business entities; "corporate opportunities;" and restructuring. The various complex concepts foreign to lay people encompassed in these transactions include mutual insurance company governance issues, corporate debt, funding and initial public offerings, equity, premium to surplus and gross leverage ratios, expense ratios, loss ratios, combined ratios, underwriting, pooling and inter-company operating agreements, conflicts of interest, corporate restructuring, tender offers, return on premium, risk-based capital, and preferred versus common stock. As to each of the challenged transactions, Plaintiff seeks an accounting to determine the consideration exchanged between the parties.

The defendants add that, because the plaintiff seeks over $500,000,000 in damages, complex valuations at various times during an eight-year time period would be required. They estimate they alone have produced more than 100,000 pages of documents; the plaintiff has issued subpoenas to eight nonparty actuarial and accounting entities, and additional voluminous docu-

ments will be produced. They estimate the trial will last at least twelve weeks. In view of these assertions, we assume, for purposes of this appeal, this is truly a "complex" case.

We first address the claim by the defendants that we have already recognized a complex-litigation exception in *Weltzin* in which we said:

> [T]his court recognizes that in a shareholder's derivative suit a judge is simply better equipped to hear the complicated corporation and duty claims....
>
> ... Moreover, allowing this type of complex case to be adjudicated by a jury may actually *offend* Iowa's constitutional mandate of due process under article I, section 9 [of the Iowa Constitution].

618 N.W.2d at 301–02 (citations omitted).

*Weltzin* did not, as the defendants urge, establish a general complexity exception to the constitutional right to a jury trial. In *Weltzin* we said, "[t]he derivative suit exists only in equity." 618 N.W.2d at 297. The statement from *Weltzin* about complexity gives additional reasons why bench trials might be better than jury trials in derivative actions. This language merely supports what was already the rule: derivative actions are to be tried in equity. It was not necessary to the holding of the case and was therefore dictum. Although we reject the argument that *Weltzin* establishes a general complex-litigation exception to the constitutional right to a jury trial, the question remains whether we will, independently of the *Weltzin* language, adopt a complexity exception.

As one court has observed, the "practical considerations [presented in complex litigation] diminish in importance when they come in conflict with the constitutional right to a jury in civil cases." *In re U.S. Financial Securities Litigation*, 609 F.2d 411, 416 (9th Cir.1979) (applying Seventh Amendment right to jury under Federal Constitution). Cases recognizing a complex-litigation exception to the right to a jury trial sometimes rely on this language in a footnote in *Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970):

> As our cases indicate, the "legal" nature of an issue is determined by considering, first, the pre-merger custom with reference to such questions; second, the remedy sought; and, third, *the practical abilities and limitations of juries*. Of these factors, the first, requiring extensive and possibly abstruse historical inquiry, is obviously the most difficult to apply.

*Ross*, 396 U.S. at 538 n. 10, 90 S.Ct. at 738 n. 10, 24 L.Ed.2d at 736 n. 10 (emphasis added). In *In re Financial Securities*, 609 F.2d at 425–26, the court discussed the general criticism that has been levied against the *Ross* footnote and noted widespread refusal of courts to follow it. The court said:

> While the Supreme Court has never specifically repudiated the third factor in the *Ross* footnote, it has never met with general acceptance by the courts. In the *Ross* decision itself, the court did not consider the practical abilities and limitations of juries. And, although the Supreme Court has considered the Seventh Amendment question in depth on at least five occasions since *Ross*, the abilities of juries have never been considered. The subsequent decisions have all relied upon the traditional historical test.

*Id.* (footnotes omitted).

We believe *Financial Securities* accurately assessed the *Ross* footnote. The court in *Financial Securities* said:

> While it is unclear as to what was meant by the inclusion of the third factor [in *Ross*, "the practical abilities and limitations of juries"], we do not believe that it

stated a rule of constitutional dimensions. After employing an historical test for almost 200 years, it is doubtful that the Supreme Court would attempt to make such a radical departure from its prior interpretation of a constitutional provision in a footnote.

*In re U.S. Financial Securities,* 609 F.2d at 425.

The Supreme Court's great solicitude for jury trials is illustrated by this language in *Dimick v. Schiedt,* 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603, 611 (1935):

Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.

Of course, the footnote in *Ross,* which considered the United States Constitution's Seventh Amendment, is not binding on us in our assessment of Iowa's constitution. Nevertheless, we have considered these federal cases interpreting the Seventh Amendment with respect to a complexity exception, and we adopt the reasoning of cases such as *In re Financial Securities* in applying our own jury-trial constitutional provision.

■ The defendants have not demonstrated that, as a general rule, a judge may be expected to do a better job of trying the issues in a complex case. In fact, as the court said in *Financial Securities:*

The assumption that attorneys cannot develop and present complex cases to a jury underestimates the abilities of the bar, especially the experienced and capable counsel associated with the present litigation. Whether a case is tried to a jury or to a judge, the task of the attorney remains the same. The attor-

ney must organize and assemble a complex mass of information into a form which is understandable to the uninitiated. In fact, one judge has suggested attorneys may do a better job of trying complex cases to a jury than to a judge.

*In re U.S. Financial Securities,* 609 F.2d at 427 (citing Patrick E. Higginbotham, *Continuing the Dialogue: Civil Juries and the Allocation of Judicial Power,* 56 Tex. L.Rev. 47, 54–55 (1977)). Oversight by a judge is available in various ways, including summary judgments, directed verdicts, new trials, judgments notwithstanding the verdict, and orders for remittitur and additur. In addition, no definitive criteria for boundaries are established to identify "simple," "complex but not too complex," and "too complex" for juries. *See SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1127 n. 3 (Fed.Cir.1985). Based on these reasons and the weight of authority in other jurisdictions, we reject the defendants' request for recognition of a "complex litigation" exception to the constitutional right to a trial by jury. We affirm on the defendants' appeal.

### III. *The Cross–Appeal.*

■ The plaintiff cross-appealed from the district court's denial of a jury trial on Count VII entitled "Breach of Fiduciary Duty by the Individual Defendants," and seeking "damages and other relief. . . ."

In *Rieff I* we said Count VII stated a claim for breach of duties owed to the individual plaintiffs and distinguished these from duties owed to the corporation and, therefore, subject only to a derivative action. *Rieff I,* 630 N.W.2d at 294–95. The plaintiffs in Count VII assert direct damages to the plaintiffs recognizable in a direct action by them.

■ In *Cunningham v. Kartridg Pak Co.,* 332 N.W.2d 881, 883 (Iowa 1983), we noted the general rule:

As a matter of general corporate law, shareholders have no claim for injuries to their corporation by third parties unless within the context of a derivative action.

However, there is

a well-recognized exception to the general rule: a shareholder has an individual cause of action if the harm to the corporation also damaged the shareholder in his capacity as an individual rather than as a shareholder.

*Id.*

We conclude the district court erred in denying a jury trial under Count VII because that count raised issues of direct, not derivative, liability. We therefore reverse on the cross-appeal.

**AFFIRMED ON APPEAL, REVERSED ON CROSS–APPEAL, AND REMANDED FOR FURTHER PROCEEDINGS.**

All justices concur except CARTER, STREIT, and WIGGINS, JJ., who take no part.